1  Jesse Wing, WSBA #27751
   JesseW@mhb.com
2  Katherine C. Chamberlain, WSBA #40014
   KatherineC@mhb.com
3  MacDonald Hoague & Bayless
   705 Second Avenue, Suite 1500
4  Seattle, Washington  98104-1745
   (206) 622-1604

5

6

7              UNITED STATES DISTRICT COURT
      EASTERN DISTRICT OF WASHINGTON AT SPOKANE
8

9  PRISON LEGAL NEWS, a project of       No. CV-11-029-RHW
   the HUMAN RIGHTS DEFENSE
10 CENTER,                               MEMORANDUM IN SUPPORT OF
                                         PLAINTIFF'S MOTION FOR
11                Plaintiff,             PRELIMINARY INJUNCTION

12         v.                            WITH ORAL ARGUMENT

13 SPOKANE COUNTY, SPOKANE
   COUNTY SHERIFF'S OFFICE; OZZIE
14 KNEZOVICH, individually and in his
   capacity as Spokane County Sheriff;
15 JOANNE LAKE, in her official and
   individual capacity; LYNETTE
16 BROWN, in her official and individual
   capacity,
17
                  Defendants.
18

19        Prison Legal News respectfully moves for an order preliminarily enjoining

20 Defendants from enforcing unconstitutional policies to censor Plaintiff's

21 subscription materials, book catalogs, and letters, and ordering Defendants to

22 afford to Plaintiff due process notice and an opportunity to be heard to challenge

23 Defendants' censorship decisions.

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION - 1

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

9870.02 eb020901

1

## I.    FACTS

2    A.    Parties

3    Plaintiff Prison Legal News ("PLN") is a project of the Human Rights

4    Defense Center, a non-profit corporation.  Declaration of Paul Wright ¶1.  PLN

5    publishes a monthly journal of corrections, news, and analysis by the same name:

6    *Prison Legal News: Dedicated to Protecting Human Rights. Id.* ¶2.  PLN has over

7    7,000 subscribers in the U.S. and abroad, including attorneys, journalists, public

8    libraries, judges, and prisoners at about 2,200 correctional facilities nationwide.

9    *Id.* ¶¶3-4.  PLN engages in protected speech and expressive conduct on matters of

10   public concern, such as prison operations and conditions, prisoner health and

11   safety, and prisoners' rights.  *Id.* ¶5; *see Prison Legal News v. Lehman*, 397 F.3d

12   692 (9th Cir. 2005) (PLN's mail to prisoners is protected by the First Amendment).

13   Defendants include Spokane County and the Spokane County Sheriff's

14   Office—which operates the Spokane County Jail and the Geiger Corrections

15   Center (collectively "the Spokane County Jail" or "the Jail") in Spokane,

16   Washington.  These facilities house convicted prisoners and pretrial detainees

17   charged with federal or state crimes.  *See, e.g., Rentz v. Spokane County*, 438 F.

18   Supp. 2d 1252, 1254 (E.D. Wa. 2006); *Brown v. Manning*, 630 F. Supp. 391, 394

19   (E.D. Wa. 1985).  The average daily population for these facilities combined is

20   1,170 prisoners.  *See* Ex. 1[1] to Declaration of Jesse Wing.

21   Defendant Ozzie Knezovich is the Sheriff of Spokane County.  *See* Ex. 2.

22

23   [1] All numbered exhibits are attached to the Declaration of Jesse Wing; all lettered
     exhibits are attached to the Declaration of Paul Wright.

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION - 2

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

9870.02 eb020901

1    The Sheriff is responsible for Jail operations, and the training and supervision of its

2    staff, including those who interpret and implement the mail policy for prisoners.

3    *See* RCW 36.28.010.  The Sheriff is the policymaker for the Jail, including its mail

4    policies.  *Cf. Davis v. Mason County*, 927 F.2d 1473, 1481 (9th Cir. 1991) (holding

5    sheriff is policymaker).  News articles state that Defendant Joanne Lake is a

6    Lieutenant with the Sheriff's Office and Defendant Lynette Brown was Office

7    Manager for the Jail when it created the current mail policy, and that they were

8    responsible for and personally participated in creating the policy.  *See* Ex. 3.

9    B.    Spokane County Jail Censors PLN's Mailings

10    In August and September 2010, Prison Legal News mailed its monthly

11    journal, a soft-cover book entitled *Protecting Your Health and Safety*,

12    informational brochures about subscribing to PLN, and a catalog of books that

13    PLN offers, addressed personally to prisoners at the Spokane County Jail.  *See*

14    Wright Dec. ¶¶6-7, 14; *E.g.*, Exs. DDD, EEE, FFF, GGG, and HHH.

15    But the Jail rejected the one-page informational brochures, book catalogs,

16    and book offers that PLN mailed to nearly 30 prisoners.  *Id.* ¶¶8-9; Exs. A through

17    AA.  When censoring these mailings, the Jail stamped the envelopes "Return to

18    Sender" and returned them to PLN, *id.*, marked with different justifications.  The

19    Jail stamped "unauthorized content" on thirteen of the envelopes, but did not

20    explain what was unauthorized, or why.  *See* Exs. O-Z, AA.  The Jail stamped

21    eleven envelopes "unauthorized content" with the notation "postcard policy" on

22    three and "not a post card" on eight, without any explanation of what that meant.

23    *See* Exs. A-C, D-E, H, J-N.  The Jail returned three envelopes stamped "Exceeds

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION - 3

MacDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

9870.02 eb020901

¼" thickness/size limit" that did not exceed ¼" thickness and were identical to other mail returned for other reasons. *Compare* Exs. F-G, I with Exs. A-E, H, J-K.

The Jail also censored 24 issues of the journal *Prison Legal News* mailed to prisoners. Wright Dec. ¶11; Exs. BB through YY. Defendants stamped the envelopes with the ambiguous phrase "unauthorized content" as the sole justification for rejecting 23 journals. Exs. BB-LL, NN-YY. On the 24th, Defendants added the phrase "not a postcard" as its justification. Ex. MM.

Similarly, the Jail censored four copies of the book *Protecting Your Health and Safety* that PLN had mailed to prisoners, Wright Dec. ¶12; Exs. ZZ-CCC, stamping "unauthorized content" as the sole justification for rejection, *id.*

Although they returned censored envelopes, journals, and books to PLN, Defendants never notified PLN of any opportunity to appeal the Defendants' censorship decisions. *See* Wright Dec. ¶13; Exs. A through CCC thereto.

C.    <u>Defendants Censored Mail Under Facially Unconstitutional Policies</u>

1.    <u>Unconstitutional Ban on Incoming Mail that is Not a Postcard</u>

On August 10, 2010, the Office of Sheriff Knezovich issued a press release titled "Changes Coming To Inmate Mail," which stated: "September 1st marks the day when Spokane County Detention Services enacts new rules that restrict incoming and outgoing mail to 5.5" x 8.5" postcards." Ex. 4. The postcards-only policy prohibits mail other than "non-glossy" and "pre-franked" postcards (apart from "legal and official mail.") Ex. 5 at 1.

The Sheriff's press release claims, "The principal benefit of the change is added safety to inmates and staff. Potentially hazardous substances can be secreted

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION - 4

9870.02 eb020901

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

1  into envelopes which corrections officers have to open." Ex. 4.  News accounts say

2  that the Jail claims, "the change comes down to time and money... Restricting mail

3  to postcards means fewer staff members needed to inspect and sort.  In just the few

4  weeks of the new policy the mail volume has been cut in half."  Ex. 6.

5      As explained above, the Jail has censored many of PLN's informational

6  brochures, book catalogs, and book offers pursuant to its new "postcard policy."

7      2.    Unconstitutional Ban on Book Catalogs

8      Defendants' new mail policy also restricts the types of "Publications"

9  allowed in prison to: "newspapers, paperback books, and approved magazines".

10  Ex. 5 at pg. 6.  On its face, this policy prohibits all other types of publications

11  including catalogs such as the book catalogs that PLN mailed to prisoners, which

12  the Jail censored.  *See, e.g.*, Exs. A through L.  When rejecting thirteen catalogs,

13  the Jail claimed "unauthorized content" without explanation. *See* Exs. O-Z, AA.

14  For eleven others, the Jail identified the postcard-only policy as its reason for

15  rejection.  Since the Jail failed to articulate its justification, it is unclear whether

16  the Jail relied on its "postcard only" or "no catalogs" policy, or both, to censor

17  these mailings.

18      3.    Unconstitutional Lack of Procedural Due Process Protections

19      As set forth above, when rejecting PLN's monthly journal, its soft-cover

20  books, and many envelopes containing informational brochures, book catalogs, and

21  book offers, Defendants stamped the phrase "unauthorized content" as the sole

22  reason for rejection.  The Jail did not notify PLN what was unauthorized.  Wright

23  Dec. ¶13.  Similarly, when the Jail rejected PLN's mailings on the grounds "not a

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION - 5

MacDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

9870.02 eb020901

1    post card" or "postcard policy," Defendants did not articulate its policy. *Id.*

2    The mail policies of the Spokane County Jail fail to require the Defendants

3    to notify the sender of rejected mail that Defendants censored it, or the reasons for

4    censorship. *See* Ex. 5. Nor does the Jail policy require notice to the sender, or an

5    opportunity to appeal the censorship decisions. *Id.*

6    By adopting and applying these policies to censor Prison Legal News's mail

7    to prisoners, and by doing so without due process, the Jail is unconstitutionally

8    interfering with protected expressive activities and chilling future speech. Since

9    PLN will continue to communicate with prisoners confined in the Spokane County

10    Jail, Defendants' policies and practices will likely violate PLN's free speech rights

11    in the future without due process, causing irreparable harm. Wright Dec. ¶16.

## II.    ARGUMENT

13    A.    <u>Preliminary Injunction Standard</u>

14    When asked to grant a preliminary injunction where the public interest is at

15    stake, a court must consider whether: (1) the plaintiff is likely to succeed on the

16    merits, (2) the plaintiff is likely to suffer irreparable harm in the absence of

17    preliminary relief, (3) the balance of equities tips in his favor, and (4) an injunction

18    is in the public interest. *California Pharmacists Assoc. v. Maxwell-Jolly*, 563 F.3d

19    847, 849 (9th Cir. 2009); *see also* Fed. R. Civ. P. 65(a).

20    B.    <u>PLN is Likely to Succeed on the Merits</u>

21    1.    <u>First Amendment</u>

22    Plaintiff's right to correspond with prisoners through the mail is protected by

    the First Amendment. *Prison Legal News v. Lehman*, 397 F.3d 692, 699 (9th Cir.

23    2005) ("*PLN II*"). In *Thornburgh v. Abbott*, 490 U.S. 401, 408 (1989), the

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION - 6

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

9870.02 eb020901

1   Supreme Court recognized that publishers have a protected First Amendment

2   interest in access to prisoners. *See also Prison Legal News v. Cook*, 238 F.3d

3   1145, 1149 (9th Cir. 2001) ("*PLN I*").

4         Prison Legal News's correspondence with prisoners is "core protected

5   speech" because it addresses issues of corrections policy and other social and

6   political matters of public concern, which "occupies the 'highest rung of the

7   hierarchy of First Amendment values,' and is entitled to special protection."

8   *Connick v. Myers*, 461 U.S. 138, 145 (1983) (internal citation omitted); *see also*

9   *PLN I*, 238 F.3d at 1149. "[T]he conditions in this Nation's prisons are a matter

10  that is both newsworthy and of the greatest public importance." *Pell v.*

11  *Procunier*, 417 U.S. 817, 831, n.7 (1974). A "blanket prohibition against receipt of

12  the publications by any prisoner carries a heavy presumption of

13  unconstitutionality." *Pepperling v. Crist*, 678 F.2d 787, 791 (9th Cir. 1982).

14        To withstand First Amendment scrutiny, a prison policy must be "reasonably

15  related to legitimate penological interests" under the four "Turner" factors:

16        (1) whether the regulation is rationally related to a legitimate and
         neutral governmental objective, (2) whether there are alternative
17        avenues that remain open to the inmates to exercise the right, (3) the
         impact that accommodating the asserted right will have on other
18        guards and prisoners, and on the allocation of prison resources; and
         (4) whether the existence of easy and obvious alternatives indicates
19        that the regulation is an exaggerated response by prison officials.

20  *PLN II*, 397 F.3d at 699 (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)). The first

21  of these factors can be dispositive: "if a regulation is not rationally related to a

22  legitimate and neutral governmental objective, a court need not reach the

23  remaining three factors." *Id.*; *see also, PLN I*, 238 F.3d at 1151.

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION - 7

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

9870.02 eb020901

1    Defendants are required under *Turner* to articulate how their policy furthers

2    a legitimate penological interest; it may not be presumed:

3       The initial burden is on the State to put forth a "common-sense"
        connection between its policy and a legitimate penal interest. If the
4       State does so, the plaintiff must present evidence that refutes the
        connection. *Id.* at 357. The State must then present enough counter-
5       evidence to show that the connection is not so "remote as to render the
        policy arbitrary or irrational." *Id.*

6    *Clement v. Cal. Dept. of Corrections*, 220 F. Supp.2d 1098, 1109 (N.D. Cal. 2002)

7    (citing *Frost v. Symington*, 197 F.3d 348 (9th Cir. 1999)).

8       Although corrections officials often emphasize that courts afford deference

9    to their experience, it is well-recognized that the *Turner* test "is not toothless."

10   *Thornburgh*, 490 U.S. at 414.

11      Prison authorities cannot rely on general or conclusory assertions to
        support their policies. Rather, they must first identify the specific
12      penological interests involved and then *demonstrate* both that those
        specific interests are *the actual bases* for their policies and that the
13      policies are reasonably related to the furtherance of the identified
        interests. An *evidentiary showing* is required as to each point.

14   *Walker v. Sumner*, 917 F.2d 382, 386 (9th Cir. 1990) (emphasis added). The

15   government may not pile "conjecture upon conjecture" to justify infringement of

16   constitutional rights. *Reed v. Faulkner*, 842 F.2d 960, 963-64 (7th Cir. 1988).

17   **Postcard-Only Policy Unconstitutionally Infringes Free Speech**

18      **(1)    First Factor: The Ban is Irrational**

19      Applying *Turner*, the Ninth Circuit has repeatedly rejected the same

20   rationales offered by the government here to justify prison policies that arbitrarily

21   restrict a publisher's right to communicate by mail with prisoners. *See PLN II*, 397

22   F.3d 692, 699-701 (9th Cir. 2005) (striking down ban of non-subscription bulk

23   mail and catalogs); *Ashker v. California Dept. of Corrections*, 350 F.3d 917, 924

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION - 8

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

9870.02 eb020901

1  (9th Cir. 2003) (striking down policy requiring approved vendor labels); *PLN I*,

2  238 F.3d 1145, 1149-1151 (9th Cir. 2001) (striking down ban on bulk rate non-

3  profit subscription mail); *Morrison v. Hall*, 261 F.3d 896, 904-05 (9th Cir. 2001)

4  (striking down ban on for-profit bulk rate mail); *Crofton v. Roe*, 170 F.3d 957,

5  959-61 (9th Cir. 1999) (striking down ban on gift subscriptions).

6       Here, the same outcome is likely.  Spokane County Jail representatives

7  stated publicly that the "Postcard Only" policy was implemented to save time and

8  money, and increase security.  Exs. 4 and 6.  These objectives do not justify the

9  Jail's extremely broad censorship policy, banning all mail other than postcards.

10  <u>The Ninth Circuit Has Previously Rejected Defendants' Justifications</u>

11       In *PLN I*, the Oregon Department of Corrections asserted that banning all

12  standard-rate mail enhanced prison security because mailroom staff could

13  concentrate on "timely processing acceptable mail and thoroughly inspecting such

14  mail for content and contraband."  238 F.3d at 1151.  The Ninth Circuit rejected

15  this rationale: "The reality is that all incoming mail must be sorted . . .

16  distinguishing between non-profit organization standard mail and regular/

17  commercial standard mail is not unduly cumbersome[.]"  *Id.*  Similarly, in *PLN II*,

18  when the Washington Department of Corrections claimed that it banned non-

19  subscription bulk mail to reduce mail volume and increase security, the Court

20  rejected this rationale again:  "While mailroom staff may have to spend more time

21  analyzing the content of non-subscription bulk rate mail and catalogs, such a ban . .

22  . is not rationally related to the goal of reducing contraband."  397 F.3d at 700.

23       Here, too, Defendants' "postcard only" policy is a grossly overbroad and

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION - 9

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

9870.02 eb020901

1    arbitrary means of achieving its goals.

2    <u>The Policy is Not Rationally Related to Saving Time and Money</u>

3        Inspecting and delivering mail other than a postcard is not significantly more

4    burdensome than censoring the mail, which includes, at least: (i) stamping the mail

5    "Return to Sender"; (ii) writing "postcard policy"; (iii) returning the censored mail;

6    (iv) writing a Mail Rejection Notice; and (v) delivering the notice to the prisoner.

7    And, if Defendants provided constitutionally required due process notice and an

8    opportunity to be heard *to the sender* of the mail (which they do not, *see* Section

9    II(B)(2), below) the Jail's claim that its new policy saves time and money is

10   meritless. Moreover, as explained more below, since correspondents must send

11   multiple postcards to communicate what they could fit in a letter the Jail must

12   process all of them instead of the contents of one envelope. This further undoes

13   any rational connection between the Jail's stated interests and its mail policy.

14       <u>The Policy is Not Rationally Related to Enhancing Security</u>

15       The postcard-only policy is a substantially overbroad means of enhancing

16   security. The mail policy already bans "[a]ny mail and/or items that are deemed

17   detrimental to the safety, security, and orderly operation" of the Jail. Until

18   September 2010, the Jail screened for security threats in other ways, which it has

19   not shown to be ineffective. And, the policy captures *all* correspondence, including

20   those least likely to contain hazardous substances—like letters from publishers.

21       Importantly, even if it could show that its postcard-only policy leads to some

22   savings of time or money, the Jail nevertheless cannot place constitutionally-

23   protected speech on the chopping block to cut costs. In other contexts where the

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION - 10

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

9870.02 eb020901

1    constitutionality of prison regulations has been challenged, the Ninth Circuit has

2    held that "efficiency and cost effectiveness" are not "valid *security* concerns."

3    *Jeldness v. Pearce*, 30 F.3d 1220, 1230 (9th Cir. 1994) (emphasis in original)

4    (holding prison's "cost and management concerns . . . must be applied consistently

5    with the requirements of Title IX."). Free speech is not a commodity like paper

6    towels that the Jail can reduce to save money so as to have more time for security.

7            The Policy is Overbroad and Arbitrary

8            Defendants have no legitimate justification for singling out all regular mail

9    except postcards to censor. The Defendants' distinction between forms of written

10   communications is arbitrary—and harmful. Letters, book catalogs, and written

11   communications other than postcards often contain core political and social speech

12   or invite the reader to request such speech. Letters facilitate the exchange of views

13   on poor jail conditions and how to alleviate them, on legal rights, on how to

14   address private medical, psychological, and educational needs, and many other

15   important topics. For centuries, letters have facilitated exchange of ideas, in detail.

16           In stark contrast, postcards provide so little space that meaningful exchange

17   of ideas is all but foreclosed. Defendants' solution of allowing correspondents to

18   mail multiple postcards is absurd. *See* Ex. 5 at pg. 1. And there is virtually no

19   corresponding benefit to Defendants, who must review each postcard. For

20   example, in place of a correspondent's three-page 8.5" x 11" paper letter in a

21   single envelope the Jail would have to review and process more than six postcards

22   written by the sender conveying the same speech. There is no appreciable decrease

23   in mail volume except at the arbitrary expense of speech.

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION - 11

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

9870.02 eb020901

1    <u>The Policy Deters Speech</u>

2         Importantly, the only reasonable explanation for the Defendants' statement

3    that their "Postcard Only" policy will save time and money is that it deters, chills,

4    and suppresses speech.  *See* Wright Dec. ¶17-19; *see also Ashker v. California*

5    *Dept. of Corrections*, 350 F.3d 917, 921 (9th Cir. 2003) (noting that the prison's

6    approved-vender label policy caused publisher to stop sending books to

7    correctional facilities).  Indeed, Defendants have applauded their policy's

8    effectiveness stating that the "mail volume has been cut in half."  Ex. 6.  Since the

9    policy requires publishers and others who wish to communicate with prisoners to

10   conform their written communications to an unusual and burdensome form, it is

11   not surprising that many correspondents have been deterred from speaking entirely.

12        In fact, limiting speech to a postcard causes significant inconvenience and

13   increased costs sufficient to substantially reduce the speech of many family

14   members, friends, and professionals such as doctors, and is sufficient to deter

15   publishers, booksellers, companies, and others from communicating at all.  Family

16   members and friends must find a store that sells postcards, buy multiple postcards

17   and postage for each of them, and fit their communications within the small

18   confines of the card, allowing room for their own name and address, the

19   addressee's name and address, postage, the postmark, and the Jail's "received"

20   stamp.  Correspondingly, it is completely impractical to think that most publishers,

21   booksellers, and others would spend the resources to create special postcards just

22   to communicate their messages to the prisoners at this Jail.  In short, if mail

23   volume went down it is because Defendants have stamped out protected speech.

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION - 12

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

9870.02 eb020901

1    <u>The Policy Impedes Rehabilitation</u>

2        Under the guise of accomplishing objectives that are irrationally and

3    arbitrarily connected to Defendants' policy, the "Postcard Only" policy *hampers*

4    the penological objective of rehabilitation.  The Supreme Court has recognized that

5    "the weight of professional opinion seems to be that inmate freedom to correspond

6    with outsiders advances rather than retards the goal of rehabilitation[.]" *Procunier*

7    *v. Martinez*, 416 U.S. 396, 412-413 (1974), overruled in part on other grounds by

8    *Thornburgh v. Abbott*, 490 U.S. 401, 417 (1989).  Indeed:

9        Constructive, wholesome contact with the community is a valuable
         therapeutic tool in the overall correctional process. . . .
10        Correspondence with members of an inmate's family, close friends,
         associates and organizations is beneficial to the morale of all confined
11        persons and may form the basis for good adjustment in the institution
         and the community.

12    *Martinez*, 416 U.S. at 413 n. 13 (quoting Policy Statement 7300.1A of the Federal

13    Bureau of Prisons and Policy Guidelines for the Association of State Correctional

14    Administrators); *see also Morrison v. Hall,* 261 F.3d 896, 904 n. 7 (9th Cir. 2001).

15        As in *PLN I* and *PLN II*, Plaintiff will likely show Defendant's "Postcard

16    Only" policy is not rationally related to a legitimate penological objective.

17        **(2)    Second Turner Factor:  Alternatives for Plaintiff**

18        The second *Turner* factor is whether Defendants afford Plaintiff an

19    alternative means to exercise its constitutional rights. They do not. PLN has no

20    practical way to reach its intended audience. PLN cannot communicate its speech

21    *by mail* because its letters and brochures to thousands of persons across the country

22    are not written on postcards, and its catalog describing 43 different books for sale

23    does not fit onto a postcard.  Wright Dec. ¶17.  PLN cannot effectively

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION - 13

9870.02 eb020901

MacDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

1   communicate its written speech by telephone or fly from Vermont to Washington

2   to meet with prisoners. *Id.* Like most publishers, PLN cannot tailor its

3   correspondence to the irrational requirements of a particular jail. *Id.*

4       Courts have rejected mail policies requiring speech to be communicated by a

5   particular medium. In *Morrison v. Hall,* 261 F.3d 896 (9th Cir. 2001), the Ninth

6   Circuit rejected the Oregon DOC's argument that it could ban bulk-rate mail

7   because prisoners may listen to radio or watch television instead: "Although radio

8   and television are alternative media by which inmates may receive information

9   about the 'outside' world, they should not be considered a substitute for reading

10  newspapers and magazines." *Id.* at 904.  Twenty-five years ago, the Fifth Circuit

11  rejected the same argument in *Mann v. Smith,* 796 F.2d 79, 83 (5th Cir. 1986):

> [T]he contents of television are different from what one finds in the
> printed media. It is not up to the Midland County Sheriff or this court
> to decide that television can adequately serve the first amendment
> right to receive protected materials.

14      Costly alternatives have likewise been held inadequate.  In *PLN I,* 238 F.3d

15  at 1149, and *Morrison,* 261 F.3d at 904, the Ninth Circuit denied the governments'

16  claims that banning bulk rate mail was permissible because publishers could send

17  mail via first or second class, holding that forcing a publisher to "take additional

18  costly steps" to communicate with prisoners is unconstitutional.

19      **(3)    Third Turner Factor: Effect on Defendants' Resources**

20      The third Turner factor is the effect on prison staffing and resource

21  allocation. *Turner,* 482 U.S. at 90.  "[T]he policies followed at other well-run

22  institutions [are] relevant to a determination of the need for a particular type of

23  restriction." *Morrison,* 261 F.3d at 905 (quoting *Martinez,* 416 U.S. at 414 n.14).

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION - 14

9870.02 eb020901

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

1   PLN has communicated its letters, catalogs, and brochures via mail to thousands of

2   prisoners country-wide since its founding in 1990.  Wright Dec. ¶3.  It distributes

3   its journal to about 2,200 correctional facilities, including the Federal Bureau of

4   Prisons ("BOP") housing 209,770 prisoners, Ex. 9, and the Washington

5   Department of Corrections ("WDOC") housing over 16,000, Ex. 10.

6       Neither the BOP nor the WDOC restrict incoming mail to postcards, or bans

7   catalogs. *See* Exs. 7, 8. This is strong evidence the third *Turner* factor favors PLN.

8       **(4)    Fourth Turner Factor: Defendants' Alternatives**

9       The fourth *Turner* factor is whether prison authorities have "readily

10  available" alternatives. "[T]he existence of obvious, easy alternatives may be

11  evidence that the regulation is not reasonable, but is an 'exaggerated response' to

12  prison concerns." *Turner,* 482 U.S. at 90.  Regardless of the Defendants' claimed

13  justifications, the fact that more than 2,000 correctional facilities nationwide accept

14  PLN's materials suggests that the Jail's ban is an exaggerated response. *See*

15  *Hrdlicka v. Reniff*, --- F.3d ----, 2011 WL 285220, *10 (9th Cir., Jan. 31, 2011)

16  (holding widespread distribution of publisher's materials suggests jails' bans may

17  be exaggerated response).  Indeed, until September of last year, Defendants

18  accepted envelopes too.

19      **Banning Catalogs Is Irrational**

20      Prison Legal News is likely to show that Defendants' catalog ban[2] is

21  _____

22  [2] Defendants' mail policy bans all catalogs and other publications that are not a

23  newspaper, paperback book, or approved magazines. *See* Ex. 5, at pg. 6.

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION - 15

9870.02 eb020901

MacDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1   unconstitutional.  In *PLN II*, the Ninth Circuit held that a blanket ban on catalogs

2   violates the First Amendment, and permanently enjoined the Washington

3   Department of Corrections's ban.  397 F.3d 692, 696 (9th Cir. 2005).  A political

4   subdivision of Washington, the Spokane Jail is bound by Ninth Circuit precedent.

5         Book catalogs can spark interest in science, literature, music, art, and human

6   rights.  PLN's 2010 book catalog describes 43 books, dictionaries, and resource

7   materials on the rights of prisoners regarding health and safety, self-representation

8   in court, finding a lawyer, job searches, successful reentry upon release from

9   prison, and the mental health crisis in prisons.  *See* Ex. GGG.  Since the Ninth

10  Circuit has already held under the first *Turner* factor that censoring catalogs is

11  irrational, and unconstitutional, no analysis under the other factors is warranted.

12        2.    Fourteenth Amendment

13        The Supreme Court long ago recognized that a publisher's right to

14  communicate with prisoners is rooted not only in the First Amendment, but also in

15  the Fourteenth Amendment.  *Pell v. Procunier*, 417 U.S. 817, 832 (1974).  Thus,

16
        [T]he decision to censor or withhold delivery of a particular letter
17      must be accompanied by minimum procedural safeguards. The
        interest of prisoners and their correspondents in uncensored
18      communication by letter, grounded as it is in the First Amendment, is
        plainly a "liberty" interest within the meaning of the Fourteenth
19      Amendment even though qualified of necessity by the circumstance of
        imprisonment. As such, it is protected from arbitrary governmental
20      invasion . . .

21  *Martinez*, 416 U.S. at 417-18.  Repeatedly, the Ninth Circuit and Eastern District

22  of Washington have reaffirmed this core principle that notice and an opportunity to

23  appeal censorship by prisons is required by the Constitution. *See, e.g., PLN I*, 238

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION - 16

MacDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

9870.02 eb020901

F.3d at 1152-53; *PLN II*, 397 F.3d at 701; *Krug v. Lutz*, 329 F.3d 692, 697-98 (9th Cir. 2003); *Miniken v. Walter*, 978 F.Supp. 1356, 1363-64 (E.D. Wa. 1997).

Publishers have a right to procedural due process because:

> Without notifying the free citizen of the impending rejection, he would not be able to challenge the decision which may infringe his right to free speech . . . [and] since the inmate-recipient would not have seen the contents of the withheld letter, he may require the aid of the author to meaningfully challenge the rejection decision.

*Martin v. Kelley*, 803 F.2d 236, 243-44 (6th Cir. 1986); *see also, Montcalm Pub. Corp. v. Beck*, 80 F.3d 105, 109 (4th Cir. 1996); *Cofone v. Manson,* 409 F.Supp. 1033, 1042 (D. Conn. 1976).

Although Defendants are constitutionally mandated to afford due process protections to publishers when censoring prisoner mail, Defendants have plainly failed to do so.  Defendants gave grossly inadequate notice when censoring Prison Legal News's publications, catalogs, books, and correspondence. For some mailings, the Jail merely returned the material stamped with the uninformative moniker "unauthorized content" without identifying to PLN which aspects were not authorized, why, and what policy applies.  When censoring other mailings, the Jail's stated justifications were merely "not a post card," "unauthorized content, not a post card," or "exceeds 1/4" thickness/size limit."  These perfunctory and obtuse notations did not sufficiently notify PLN what was objectionable and how the publisher could cure any defect, or challenge the rejection.

Further, Defendants failed to provide Plaintiff with *any* opportunity to be heard to challenge the censorship decisions.  Defendants' rejection stamp provides *no* information to Plaintiff about how to challenge rejection decisions, who to

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION - 17

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

9870.02 eb020901

1  contact, what the appeal must contain, or any deadlines. *See* Wright Dec. ¶13;

2  Exs. A-CCC.  Nor do Defendants' mail polices provide any appeal rights or

3  procedures.

4      The Jail's failure to afford PLN an opportunity to be heard interfered with

5  the correction of obviously erroneous censorship.  For example, the Jail wrote the

6  words "exceeds 1/4" thickness/size limit" as the basis for censorship on several

7  envelopes that contained three folded standard pieces of paper, self-evidently well

8  under 1/4" in thickness.  Further, the opportunity to be heard would have been

9  important to challenge the Jail's statement of *different* reasons for rejecting

10 identical materials.  For example, the Jail rejected the same informational

11 brochures and book catalogs sent by PLN to different prisoners by marking some

12 "unauthorized content," others "not a postcard" and yet others "exceeds 1/4"

13 thickness/size limit."  *See e.g.* Exs. A, F, and J.  And, the Jail sometimes gave the

14 prisoner addressee one reason for rejection but gave a different reason to PLN.  For

15 example, when the Jail rejected PLN's August 2010 *Prison Legal News* magazine

16 sent to prisoner Bacon, the Jail told PLN "unauthorized content" was the reason for

17 rejection, while it told Mr. Bacon the mail was "Not Legal." *Compare* Exs. OOO,

18 NNN, and LLL; *see also,* Exs. U and III; XX and JJJ; G and KKK; B, LLL, and

19 MMM; AAA and PPP. An opportunity to be heard is a crucial, constitutionally-

20 mandated chance to correct errors, which Defendants denied to PLN.

21     Prison Legal News has a strong likelihood of showing that Defendants have

22 violated, and will continue to violate, its procedural due process rights.

23

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION - 18

MacDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

9870.02 eb020901

C.    <u>PLN Continues to Suffer Irreparable Harm as a Result of the Censorship</u>

"[A]n alleged constitutional infringement will often alone constitute irreparable harm." *Monterey Mechanical Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997) (internal citation omitted).  Indeed, the Fourth Circuit has held that the court "has no discretion to deny relief by preliminary injunction to a person who clearly establishes by undisputed evidence that he is being denied a constitutional right." *Henry v. Greenville Airport Com'n*, 284 F.2d 631, 633 (4th Cir. 1960).

Here, Defendants continue to inflict irreparable harm on Prison Legal News by enforcing their blanket policies to censor PLN correspondence and book catalogs mailed to prisoners.  Wright Dec. ¶¶16-19.  "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373 (1976).  And, Defendants are likely to continue giving inadequate notice for censoring PLN's future communications and continue denying PLN the opportunity to be heard to challenge the censorship.

D.    <u>The Balance of Hardships Tips In Favor of Plaintiff</u>

Here, the irreparable harm suffered by Prison Legal News is concrete, severe, and ongoing.  Without due process, the government will continue to censor the publisher's mail to prisoners by banning its subscription forms, book catalogs, book offers, and other mailings containing core protected speech about publications that criticize government policies, educate on the rights of prisoners, and that offer insights on the criminal justice system and jail conditions.  In contrast, any potential injuries to the Defendants are minimal and speculative.  No great cost or expenditure of time is required to lift the policies to allow PLN to

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION - 19

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

9870.02 eb020901

1    communicate with prisoners.  The balance of hardships strongly favors Plaintiff.

2    E.    The Public Interest Favors Free Flow of Information

3         The First Amendment furthers a compelling public interest.  "[P]rior

4    restraints on speech and publication are the most serious and the least tolerable

5    infringement on First Amendment rights."  *Nebraska Press Ass'n v. Stuart*, 427

6    U.S. 539, 559 (1976).  The public has an important interest in protecting the

7    "marketplace of ideas" wherever it may be found, and in the continued vitality of

8    the Bill of Rights.  At the heart of the First Amendment is the right of the press to

9    disseminate and exchange information on important issues of public concern, in

10   particular when that discussion may be critical of the government. The public

11   interest weighs strongly in favor of enjoining Defendants from enforcing their

12   postcard only-policy and their ban on delivering PLN book catalogs.

### III.    CONCLUSION

14        Plaintiffs have shown a likelihood of success on the merits and irreparable

15   harm, whereas Defendants will suffer no meaningful harm from entry of a

16   preliminary injunction.  Accordingly, Plaintiff asks that the Court to order a

17   preliminary injunction, and waive any bond.

18        DATED this 2nd day of February, 2011.

19                              MacDONALD HOAGUE & BAYLESS

20                              By:  _Jesse_____
                                   Jesse Wing, WSBA # 27751
21                                 JesseW@mhb.com
                                   Katherine Chamberlain, WSBA # 40014
22                                 KatherineC@mhb.com
                                   Attorneys for Plaintiff

23

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION - 20

MacDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

9870.02 eb020901

CERTIFICATE OF SERVICE

I certify that on the date noted below I electronically filed this document entitled

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY**

**INJUNCTION** with the Clerk of the Court using the CM/ECF system which will send

notification of such filing to the following persons:

<u>Counsel for All Defendants:</u>

Robert B. Binger
rbinger@spokanecounty.org
Sr. Deputy Prosecuting Attorney
Spokane County Prosecuting Attorney's Office
W. 1115 Broadway, 2nd Floor
Spokane, WA 99260
Phone: 509/477-2881
Fax: 509/477-3672

DATED this 3rd day of February, 2011, at Seattle, Washington.

Brina Carranza, Legal Assistant

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION - 21

9870.02 eb020901