**HONORABLE ROBERT H. WHALEY**

ROBERT B. BINGER
  Sr. Deputy Prosecuting Attorney
Spokane County Prosecuting Attorney's Office
W. 1115 Broadway, 2nd Floor
Spokane, Washington 99260
(509) 477-5764
Attorneys for Defendants

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| PRISON LEGAL NEWS, | ) | No.  CV-11-029-RHW |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM IN** |
| | ) | **OPPOSITION TO PLAINTIFFS'** |
| v. | ) | **MOTION FOR PRELIMINARY** |
| | ) | **INJUNCTION** |
| SPOKANE COUNTY, et al. | ) | |
| | ) | |
| Defendants. | ) | |

* * * * * * * * * * * * * *

COME NOW Defendants by and through the undersigned counsel of the

Prosecuting Attorney's Office, and submit this Memorandum in Opposition to

Plaintiffs' Motion for Preliminary Injunction.

**POLICY 204 – INMATE MAIL**

Policy No. 204 was adopted September 1, 2010.  The philosophy of Policy 204

provides "Mail is an important means of assisting inmates in maintaining family and

community ties while incarcerated.  Mail must be regulated and handled in a manner

that protects an inmate's constitutional right of expression while maintaining a safe,

secure, efficient and effective custodial environment." An objective of Policy 204 is to prevent smuggling of contraband in order to promote safety and security of the inmates and corrections staff. (Affidavit of McGrath, ¶¶ 4 and 5)

Policy No. 204 was amended on February 14, 2011 to eliminate the restriction on outgoing inmate mail to postcards only. (Affidavit of McGrath, ¶6)

Policy No. 204 was further amended on February 17, 2011 as follows:

1. 204.1. The restriction on incoming inmate mail to postcards only shall not apply to legal, official and business mail. Business mail is non-privileged mail includes letters, publications, catalogs and indicating a return address of a verifiable business or non-profit organization.
2. 204.8.   Authorized Magazines shall not be limited to the ones specified in Section 204.8.
3. New Section establishes due process procedures established for inmates and senders regarding rejected mail.

(Affidavit of McGrath, ¶7)

The amendments insure the mail described in Plaintiffs' complaint and similarly situated mail is not subject to a postcard restriction.   (Affidavit of McGrath, ¶8)

Notwithstanding the above amendments, Policy 204 still restricts incoming inmate mail to postcards only, except for legal, official and business mail as set forth above.  **This remaining component of the postcard policy will be referred to hereafter as the "postcard restriction".**  (Affidavit of McGrath, ¶9)

# PRELIMINARY INJUNCTION

Plaintiffs seek a preliminary injunction seeking to have Defendants enjoined:

> 1.    from censoring or rejecting mail on the ground that it is not in the form of a postcard;
> 2.    from censoring or rejecting mail on the ground it is a catalog; and
> 3.    For each piece of mail that Defendants censor or reject, the Defendants must give written notice to the sender and addressee… [and the reason for the rejected mail and appeal rights].  (Doc. 3-1)

The first two requests for relief are moot because of Policy No. 204 amendment dated February 17, 2011 which provides in part:

> 204.1. The restriction on incoming inmate mail to postcards only shall not apply to legal, official and business mail.  Business mail is non-privileged mail which includes letters, publications, catalogs and indicating a return address of a verifiable business or non-profit organization.

The third request for relief is moot because Policy No. 204 amendment dated February 17, 2011 provides for notification to inmates and senders of mail which is rejected and provides a review process.  (Affidavit of McGrath, ¶8)

A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 129 S. Ct. 365, 374, 172 L. Ed. 2d 249 (2008)

**MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION**
**FOR PRELIMINARY INJUNCTION**
**Page 3 of 13**

Plaintiffs have no basis to seek extraordinary relief to have Defendants enjoined from conduct which Defendants have voluntarily ended without Court intervention. Extraordinary relief under this circumstance is not in the public interest and Plaintiffs can suffer no irreparable harm from policies which are no longer in effect. Defendants further object to the portions of Plaintiff's affidavit based on newspaper and news articles from on-line sources. (Doc. 12). Affidavit testimony about what the affiant read in a newspaper article or from on-line news sources is not based on personal knowledge and is inadmissible hearsay. *Jacobsen v. Filler,* 790 F.2d 1362, 1367 (1986).

Plaintiffs request for injunctive relief appears to extend to the "postcard restriction". Plaintiffs have no standing to pursue their case in this regard. Plaintiffs have not made any allegation or argument that they have sent mail which has been censored by the "postcard restriction". In any event, the "postcard restriction" is constitutional under the following Turner analysis.

## TURNER ANALYSIS

To determine whether the "postcard restriction" "is reasonably related to legitimate penological interests," and therefore valid, the Court must consider four factors: (1) whether there is a valid, rational connection between the "postcard restriction" and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right; (3) whether the impact

of accommodating the asserted constitutional right will have a significant negative impact on prison guards, other inmates and the allocation of prison resources generally; and (4) whether the "postcard restriction" is an "exaggerated response" to the jail's concerns. *Turner v. Safley*, 482 U.S. 78, 89-90, 107 S. Ct. 2254 96 L. Ed. 2d 64 (1987); *Casey v. Lewis*, 4 F.3d 1516, 1520 (9th Cir.1993).

## A. <u>Rational Connection</u>

The first factor the Court must consider is whether there is a rational connection between the "postcard restriction" and a legitimate governmental interest. See *Turner*, 482 U.S. at 89. This requires the Court to determine whether the governmental objective underlying the policy is (1) legitimate, (2) neutral, and (3) whether the "postcard policy" is "rationally related to that objective." *Thornburgh v. Abbott*, 490 U.S. 401, 414, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989).

The "postcard restriction" is aimed at the safety and security of inmates and staff and maintaining jail security. It is beyond question that both jail security and safety of staff and inmates are legitimate penological interests. See *Thornburg* at 415, 109 S.Ct. 1874. The requirement that the "postcard restriction" be "neutral" is also met in this case. The "postcard restriction" is content neutral. One can write as many postcards to inmates as desired. The author can be as candid on the postcard as he desires. The only condition for delivery is compliance with Policy

204 and the nature of the paper mail (i.e. postcard versus sealed envelope). (Affidavit of McGrath, ¶10)

Finally, the requirement that the policy be rationally related to the jail's legitimate objectives is met in this case. To show a rational relationship between a regulation and a legitimate penological interest, prison officials need not prove that the banned material actually caused problems in the past, or that the materials are "likely" to cause problems in the future. See *Thornburgh*, 490 U.S. at 417; *Casey*, 4 F.3d at 1521. Moreover, it "does not matter whether we agree with" the defendants or whether the policy "in fact advances" the jail's legitimate interests. See *Amatel v. Reno,* 156 F.3d 192, 199 (D.C.Cir.1998). The only question that we must answer is whether the defendants' judgment was "rational," that is, whether the defendants might reasonably have thought that the policy would advance its interests.

During the time frame of January 1, 2010 through August 31, 2010 mail clerks detected approximately 201 pieces of contraband in or affixed to envelopes. (Affidavit of McGrath, ¶11)

The contraband included:  Glitter or glitter pen writing; scratch cards/stickers; lipstick; sexually explicit material; unknown/unauthorized substance; perfume; color pencils/crayon;  labels;  glossy finish/Polaroid's;  paint/magic markers;  cardboard;

1   ribbon/string/metal/wire; musical card; plastic/laminated card; home made card;

2   tape/glue; and whiteout. (Affidavit of McGrath, ¶12)

3           These items can be used to conceal liquefied controlled substances, bio-hazards

4   (body fluids, i.e. semen, vaginal secretions, blood) and if not detected and removed

5

6   before reaching the inmate population, jeopardizes the safety of inmates and

7   corrections officers. Ingestion of the controlled substances (which can include heroin,

8   phencyclidine, lysergic acid diethylamide, cocaine, powdered or ground up pills) can

9   negatively alter behavior up to and including staff and inmate assaults.  Contact with

10

11  bio-hazards can expose staff and inmates to infections (i.e. MRSA). In addition, the

12  contraband can cause allergic reactions to staff and inmates.  (Affidavit of McGrath,

13  ¶¶ 13-15, 17-19)

14          Sexually explicit material exposes staff and inmates to materials that are

15  offensive and violates the right to a workplace free of sexually explicit materials. The

16
    sexually explicit materials can create discord between offenders leading to fights and
17
    assaults. (Affidavit of McGrath, ¶16)
18
19          Materials like cardboard, ribbon, string, metal, wire, musical cards, plastic,

20  laminated cards and homemade cards can be used to jam/tamper with security

21  equipment, including locking devices.  In addition, musical card batteries can be used

22  to create potentially dangerous explosive devices. (Affidavit of McGrath, ¶20)

23

24  **MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION**
    **FOR PRELIMINARY INJUNCTION**
    **Page 7 of 13**

On December 12, 2008, a mail clerk suffered an allergic reaction from a substance contained in an envelope addressed to an inmate. The clerk had an obvious rash around her neck and chest area which spread around the back of her neck and upper shoulders.  She was immediately sent to the hospital by ambulance. All inmate booking was directed to Geiger because the risk potential of the contaminate was not identified, and could have spread throughout the facility's air handling system.  An incident command protocol was put in place and a HAZMAT team entered the jail administration area to contain the spread of the contaminate and decontaminate staff as well as the affected area.  (Affidavit of McGrath, ¶¶21 and 23)

The relationship between contraband contained on or within envelopes and the problems sought to be addressed by the limiting certain incoming inmate mail to postcards only is clear.  There is less area to search i.e. front and back of postcard versus envelope and contents of an envelope and detection of contraband is easier and more efficient. (Affidavit of McGrath, ¶¶24 and 27)  The possibility of jail staff opening envelopes containing unknown substances is eliminated. (Affidavit of McGrath, ¶25) The possibility of contraband contained within the seams of envelopes is eliminated and there are no multiple pages to inspect for contraband.  (Affidavit of McGrath, ¶26)

The relationship between the "postcard restriction" and the goals of preventing harm to staff and inmates is not so "remote as to render the policy

arbitrary or irrational."  See *Turner*, 482 U.S. at 89-90; *Amatel*, 156 F.3d at 200-01; *Dawson v. Scurr*, 986 F.2d 257, 261 (8th Cir. 1993).  The policy satisfies the first multi-faceted factor of the reasonableness standards.

**B.    Alternative Means**

The second factor the Court must consider in determining the reasonableness of the policy's restriction on constitutional rights is "whether there are alternative means of exercising the right that remain open to prison inmates." *Turner*, 482 U.S. at 90.  "Where 'other avenues' remain available for the exercise of the asserted right, courts should be particularly conscious of the 'measure of judicial deference owed to corrections officials ... in gauging the validity of the regulation.' " *Id*. (citations omitted).

This factor is not implicated by the Policy.  The "postcard restriction", allows an inmate to receive an unlimited volume of mail without restriction on content or expression.  (Affidavit of McGrath, ¶10)  The only limitation is compliance with Policy 204 and that the expression must be written on a postcard. The "postcard restriction" does not affect legal, official and business mail which includes letters, publications, catalogs and indicating a return address of a verifiable business or non-profit organization.  (Affidavit of McGrath, ¶7)

## C.    <u>Impact on Others</u>

The third factor that the Court must address is the impact that accommodation of the asserted constitutional right would have on prison personnel, other inmates, and the allocation of prison resources. See *Turner*, 482 U.S. at 90.  Here, the class of incoming mail excluded from delivery (i.e., personal correspondence not written on post cards) is limited to those found potentially detrimental to order and security in the jail.  The impact of unrestricted access would be significant.  As discussed previously, such access could lead to introduction of liquefied drugs, bio-hazards and materials that could be used to jam/tamper with security equipment.  "Where, as here, the right in question 'can be exercised only at the cost of significantly less liberty and safety for everyone else, guards and other prisoners alike,' [we] should defer to the 'informed discretion of corrections officials.' " *Thornburgh*, 490 U.S. at 418 (quoting *Turner*, 482 U.S. at 90-92).

## D.    <u>Exaggerated Response</u>

The fourth and final factor that the Court must address is whether the policy is an exaggerated response to the jail's concerns.

> [T]he absence of ready alternatives is evidence of the reasonableness of a prison regulation. By the same token, the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an "exaggerated response" to prison concerns. This is not a "least restrictive alternative" test: prison officials do not have

to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint. But if an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at de minimis cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard.

*Turner*, 482 U.S. at 90-91 (emphasis added) (citations omitted).

The burden is on the prisoner challenging the regulation, not on the prison officials, to show that there are obvious, easy alternatives to the regulation. See *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350, 107 S. Ct. 2400, 96 L. Ed. 2d 282 (1987); It is incumbent upon the prisoners to point to an alternative that accommodates their rights at de minimis cost to security interests. *Casey*, 4 F.3d at 1523.

There are no inmate claimants and no showing of an obvious, easy alternative can be made. The Policy satisfies the final factor of reasonableness standard and is constitutional.

## CONCLUSION

Plaintiffs' prayer for injunctive relief is moot. Defendants have responded to Plaintiffs' prayer with policy amendments which also negates Plaintiffs' contention of

irreparable harm.   The remaining "postcard restriction" is constitutional.   Plaintiffs'

prayer for injunction relief should be denied.

DATED this 17th day of February, 2011

STEVEN J. TUCKER
Prosecuting Attorney


__s/Robert Binger_____
Robert B. Binger, WSBA# 10774
Attorneys for Defendants
Spokane County Prosecuting Atty's Office
W. 1115 Broadway Avenue
Spokane, WA  99260
Telephone:  (509) 477-2881
Fax: (509) 477-3672
Email:  rbinger@spokanecounty.org

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 17, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:    Jesse Wing and Katherine Chamberlain.


  s/Robert Binger
Robert B. Binger, WSBA# 10774
Attorney for Defendants
Spokane County Prosecuting Atty's Office
W. 1115 Broadway Avenue
Spokane, WA  99260
Telephone:  (509) 477-2881
Fax: (509) 477-3672
Email:  rbinger@spokanecounty.org

**MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION**
**FOR PRELIMINARY INJUNCTION**
**Page 13 of 13**