Jesse Wing, WSBA #27751
JesseW@mhb.com
Katherine C. Chamberlain, WSBA #40014
KatherineC@mhb.com
MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104-1745
(206) 622-1604

Lance Weber, *Pro Hac Vice*
lweber@humanrightsdefensecenter.org
Human Rights Defense Center
PO Box 2420
Brattleboro, VT 05303
802-257-1342

Hon. Robert H. Whaley

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON AT SPOKANE

| | |
|---|---|
| PRISON LEGAL NEWS, a project of the HUMAN RIGHTS DEFENSE CENTER, <br><br> Plaintiff, <br><br> v. <br><br> SPOKANE COUNTY, et al., <br><br> Defendants. | No. CV-11-029-RHW <br><br> MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT <br><br> HEARING DATE: JUNE 16, 2011 <br> HEARING TIME: 9:00 AM <br> HEARING PLACE: THOMAS FOLEY U.S. DISTRICT COURT, 7TH FLOOR <br><br> WITH ORAL ARGUMENT |

Prison Legal News respectfully moves for an order granting partial summary judgment, declaring that Defendants created, maintained, and implemented unconstitutional mail policies censoring Plaintiff's news journal, subscription materials, book offers, book catalogs, and books, and deprived Plaintiff of due process notice and an opportunity to challenge the censorship. Plaintiff also seeks an order permanently enjoining Defendants from maintaining and enforcing its unconstitutional policies in violation of the First and Fourth Amendments.

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 1

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

9870.02 ed260902

I.    **SUMMARY OF FACTS AND POSTURE OF THE CASE**

The following brief summary is drawn from Plaintiff's Statement of Facts in Support of Motion for Partial Summary Judgment ("SOF") submitted herewith.

Plaintiff Prison Legal News ("PLN") publishes a monthly journal of corrections, news, and analysis by the same name, *Prison Legal News: Dedicated to Protecting Human Rights*. SOF ¶2. PLN has over 7,000 subscribers in the U.S. and abroad, including attorneys, journalists, public libraries, judges, and prisoners at about 2,200 correctional facilities nationwide. SOF ¶3. PLN engages in protected speech and expressive conduct on matters of public concern, including prison operations and conditions, prisoner health and safety, and prisoners' rights. SOF ¶4.

On September 1, 2010, the Spokane County Jail, operated by Defendants, implemented a new prisoner mail policy prohibiting all mail other than postcards, prohibiting catalogs, restricting prisoners from receiving any magazines other than the fifteen listed by name in the Jail's policy, and failing to afford the sender and intended recipient of mail any due process notice or opportunity to be heard to challenge censorship decisions.  SOF ¶¶23-24, 28-29, 33, 36-37.

In August and September 2010, Prison Legal News mailed its monthly journal, a soft-cover book titled *Protecting Your Health and Safety*, informational brochures about subscribing to PLN, and a catalog of books that PLN offers, addressed personally to prisoners at the Spokane County Jail.  SOF ¶12.

The Jail rejected PLN's mailings to nearly 30 prisoners.  SOF ¶13.  When censoring the brochures and book catalogs, the Jail stamped them with the vague

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 2

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

9870.02 ed260902

1  justification "unauthorized content," and some were marked "postcard policy,"

2  without any explanations.  SOF ¶¶15-16.  The Jail also censored 24 issues of the

3  journal *Prison Legal News*, stamping the envelopes with the ambiguous phrase

4  "unauthorized content" and on one, "not a postcard."  SOF ¶¶18-20.  Similarly, the

5  Jail censored four copies of the book *Protecting Your Health and Safety* that PLN

6  had mailed to prisoners, stamping "unauthorized content" to justify rejection.  SOF

7  ¶21.  Defendants never gave PLN due process notice of the censorship decisions

8  and never notified PLN of any opportunity to appeal the Defendants' censorship

9  decisions.  SOF ¶¶22, 36.

10      Plaintiff filed a motion for preliminary injunction to halt Defendants'

11  censorship and lack of due process.  SOF ¶40.  In response, Defendants modified

12  their policies.  SOF ¶¶41-42.  In its Answer, Defendants admitted the facts giving

13  rise to Plaintiff's claims but denied liability.  *See* Dkt. 34.  Plaintiff withdrew its

14  motion, and now seeks partial summary judgment and permanent relief.  SOF ¶43.

15      The material facts are uncontested and, as explained below, as a matter of

16  law the Plaintiff has established its claims.  Accordingly, Plaintiff is entitled to

17  summary judgment.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986).

18              **II.    ARGUMENT**

19  **A.    FIRST AMENDMENT**

20      Plaintiff's right to correspond with prisoners through the mail is protected by

21  the First Amendment.  *Prison Legal News v. Lehman*, 397 F.3d 692, 699 (9th Cir.

22  2005) ("*PLN II*").  In *Thornburgh v. Abbott*, 490 U.S. 401, 408 (1989), the

23  Supreme Court recognized that publishers have a protected First Amendment

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 3

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

9870.02 ed260902

interest in access to prisoners. *See also Prison Legal News v. Cook*, 238 F.3d 1145, 1149 (9th Cir. 2001) ("*PLN I*").

Prison Legal News's correspondence with prisoners is "core protected speech" because it addresses issues of corrections policy and other social and political matters of public concern, which "occupies the 'highest rung of the hierarchy of First Amendment values,' and is entitled to special protection." *Connick v. Myers*, 461 U.S. 138, 145 (1983) (internal citation omitted); *see also PLN I*, 238 F.3d at 1149. "[T]he conditions in this Nation's prisons are a matter that is both newsworthy and of the greatest public importance." *Pell v. Procunier*, 417 U.S. 817, 831, n.7 (1974). A "blanket prohibition against receipt of the publications by any prisoner carries a heavy presumption of unconstitutionality." *Pepperling v. Crist*, 678 F.2d 787, 791 (9th Cir. 1982).

To withstand First Amendment scrutiny, a prison policy must be "reasonably related to legitimate penological interests" under the four "Turner" factors:

> (1) whether the regulation is rationally related to a legitimate and neutral governmental objective, (2) whether there are alternative avenues that remain open to the inmates to exercise the right, (3) the impact that accommodating the asserted right will have on other guards and prisoners, and on the allocation of prison resources; and (4) whether the existence of easy and obvious alternatives indicates that the regulation is an exaggerated response by prison officials.

*PLN II*, 397 F.3d at 699 (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)). The first of these factors can be dispositive: "if a regulation is not rationally related to a legitimate and neutral governmental objective, a court need not reach the remaining three factors." *Id.*; *see also, PLN I*, 238 F.3d at 1151.

Defendants are required under *Turner* to articulate how their policy furthers

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 4

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

9870.02 ed260902

a legitimate penological interest; it may not be presumed:

> The initial burden is on the State to put forth a "common-sense" connection between its policy and a legitimate penal interest. If the State does so, the plaintiff must present evidence that refutes the connection. *Id.* at 357. The State must then present enough counter-evidence to show that the connection is not so "remote as to render the policy arbitrary or irrational." *Id.*

*Clement v. Cal. Dept. of Corrections*, 220 F. Supp.2d 1098, 1109 (N.D. Cal. 2002)

(citing *Frost v. Symington*, 197 F.3d 348 (9th Cir. 1999)).

Although corrections officials often emphasize that courts afford deference to their experience, it is well-recognized that the *Turner* test "is not toothless."

*Thornburgh*, 490 U.S. at 414.

> Prison authorities cannot rely on general or conclusory assertions to support their policies. Rather, they must first identify the specific penological interests involved and then *demonstrate* both that those specific interests are *the actual bases* for their policies and that the policies are reasonably related to the furtherance of the identified interests. An *evidentiary showing* is required as to each point.

*Walker v. Sumner*, 917 F.2d 382, 386 (9th Cir. 1990) (emphasis added). The government may not pile "conjecture upon conjecture" to justify infringement of constitutional rights. *Reed v. Faulkner*, 842 F.2d 960, 963-64 (7th Cir. 1988).

## 1.    Postcards-Only Policy Unconstitutionally Infringes Free Speech

### (a)    First Factor: The Ban is Irrational

Defendants' hasty elimination of their postcard-only policy is strong evidence that that policy was arbitrarily conceived. In support of Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction, Captain McGrath claimed that the entire mail policy is implemented to "prevent smuggling of contraband in order to promote safety and security of the inmates and corrections staff." Dkt. 25, ¶5. If this connection could be made between these goals and the

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 5

MacDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

9870.02 ed260902

1    policies at issue, then why did Defendants quickly abandon them in response to

2    PLN's challenge, without explanation and without justification?  It seems plain

3    that Defendants now recognize that those aspects of their policy were untenable.

4        Indeed, applying *Turner*, the Ninth Circuit has repeatedly rejected the same

5    rationales offered by the government here to justify prison policies that arbitrarily

6    restrict a publisher's right to communicate by mail with prisoners.  *See PLN II*, 397

7    F.3d 692, 699-701 (9th Cir. 2005) (striking down ban of non-subscription bulk

8    mail and catalogs); *Ashker v. California Dept. of Corrections*, 350 F.3d 917, 924

9    (9th Cir. 2003) (striking down policy requiring approved vendor labels); *PLN I*,

10   238 F.3d 1145, 1149-1151 (9th Cir. 2001) (striking down ban on bulk rate non-

11   profit subscription mail); *Morrison v. Hall*, 261 F.3d 896, 904-05 (9th Cir. 2001)

12   (striking down ban on for-profit bulk rate mail); *Crofton v. Roe*, 170 F.3d 957,

13   959-61 (9th Cir. 1999) (striking down ban on gift subscriptions).

14       Here, the same outcome is reached.  Spokane County Jail representatives

15   stated publicly that the "Postcard Only" policy was implemented to save time and

16   money, and increase security, by preventing smuggling of contraband.  Exs. 4 and

17   6; Dkt. 25, ¶¶4-5.  These objectives do not justify the Jail's extremely broad

18   censorship policy, banning all mail other than postcards.

19           (i)    *The Ninth Circuit Has Previously Rejected Defendants'*
                    *Justifications*

20       In *PLN I*, the Oregon Department of Corrections asserted that banning all

21   standard-rate mail enhanced prison security because mailroom staff could

22   concentrate on "timely processing acceptable mail and thoroughly inspecting such

23   mail for content and contraband."  238 F.3d at 1151.  The Ninth Circuit rejected

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 6

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

9870.02 ed260902

1   this rationale: "The reality is that all incoming mail must be sorted . . .

2   distinguishing between non-profit organization standard mail and regular/

3   commercial standard mail is not unduly cumbersome[.]" *Id.*  Similarly, in *PLN II,*

4   when the Washington Department of Corrections claimed that it banned non-

5   subscription bulk mail to reduce mail volume and increase security, the Court

6   rejected this rationale again:  "While mailroom staff may have to spend more time

7   analyzing the content of non-subscription bulk rate mail and catalogs, such a ban . .

8   . is not rationally related to the goal of reducing contraband."  397 F.3d at 700.

9   Notably, the Defendants here censored PLN subscription brochures and book

10  catalogs virtually identical to those censored by the Defendants in *PLN II.*

11          Here, too, Defendants' "postcard only" policy is a grossly overbroad and

12  arbitrary means of achieving its goals.

13                  *(ii)      The Policy is Not Rationally Related to Saving Time and Money*

14          Inspecting and delivering mail other than a postcard is not significantly more

15  burdensome than censoring the mail, which includes, at least: (i) stamping the mail

16  "Return to Sender"; (ii) writing "postcard policy"; (iii) returning the censored mail;

17  (iv) writing a Mail Rejection Notice; and (v) delivering the notice to the prisoner.

18  And, if Defendants provided constitutionally required due process notice and an

19  opportunity to be heard *to non-prisoners* who send mail (which they do not, *see*

20  Section II(B)(2), below) the Jail's claim that its policy saves time and money is

21  meritless.  Moreover, as explained more below, since correspondents must send

22  multiple postcards to communicate what they could fit in a letter the Jail must

23  process all of them instead of the contents of one envelope.  This further undoes

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 7

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

9870.02 ed260902

1    any rational connection between the Jail's stated interests and its mail policy.

2         (iii)    *The Policy is Not Rationally Related to Enhancing Security*

3         The postcard-only policy is a substantially overbroad means of enhancing

4    security. The mail policy already bans "[a]ny mail and/or items that are deemed

5    detrimental to the safety, security, and orderly operation" of the Jail.  Until

6    September 2010 (and presumably after it changed its mail policy in February

7    2011), the Jail screened for security threats in other ways, which it has not shown

8    to be ineffective. And, the policy captures *all* correspondence, including those least

9    likely to contain hazardous substances—like letters from publishers.

10        Importantly, even if it could show that its postcard-only policy leads to some

11   savings of time or money, the Jail nevertheless cannot place constitutionally-

12   protected speech on the chopping block to cut costs.  In other contexts where the

13   constitutionality of prison regulations has been challenged, the Ninth Circuit has

14   held that "efficiency and cost effectiveness" are not "valid *security* concerns."

15   *Jeldness v. Pearce*, 30 F.3d 1220, 1230 (9th Cir. 1994) (emphasis in original)

16   (holding prison's "cost and management concerns . . . must be applied consistently

17   with the requirements of Title IX.").  Free speech is not a commodity like paper

18   towels that the Jail can reduce to save money so as to have more time for security.

19        (iv)    *The Policy is Overbroad and Arbitrary*

20        Defendants have no legitimate justification for singling out all regular mail

21   except postcards to censor.  The Defendants' distinction between forms of written

22   communications is arbitrary—and harmful.  Letters, book catalogs, and written

23   communications other than postcards often contain core political and social speech

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 8

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

9870.02 ed260902

1    or invite the reader to request such speech, as PLN's subscription brochures do.

2    Letters facilitate the exchange of views on poor jail conditions and how to alleviate

3    them, on legal rights, on how to address private medical, psychological, and

4    educational needs, and many other important topics. For centuries, letters have

5    facilitated exchange of ideas, in detail.

6        In stark contrast, postcards provide so little space that meaningful exchange

7    of ideas is all but foreclosed. Defendants' solution of allowing correspondents to

8    mail multiple postcards is absurd. *See* Ex. 5 at pg. 1. And there is virtually no

9    corresponding benefit to Defendants, who must review each postcard. For

10    example, in place of a correspondent's three-page 8.5" x 11" paper letter in a

11    single envelope the Jail would have to review and process more than six postcards

12    written by the sender conveying the same speech. There is no appreciable decrease

13    in mail volume except at the arbitrary expense of protected speech.

14        *(v)    The Policy Deters Speech*

15        Importantly, the only reasonable explanation for the Defendants' statement

16    that their "Postcard Only" policy will save time and money is that it deters, chills,

17    and suppresses speech. *See* Wright Dec. ¶17-19; *see also Ashker v. California*

18    *Dept. of Corrections*, 350 F.3d 917, 921 (9th Cir. 2003) (noting that the prison's

19    approved-vender label policy caused publisher to stop sending books to

20    correctional facilities). Indeed, Defendants have applauded their policy's

21    effectiveness stating that the "mail volume has been cut in half." Ex. 6. Since the

22    policy requires publishers and others who wish to communicate with prisoners to

23    conform their written communications to an unusual and burdensome form, it is

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 9

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

9870.02 ed260902

1  not surprising that many correspondents have been deterred from speaking entirely.

2      In fact, limiting speech to a postcard causes significant inconvenience and

3  increased costs sufficient to substantially reduce the speech of many family

4  members, friends, and professionals such as doctors, and is sufficient to deter

5  publishers, booksellers, companies, and others from communicating at all. They

6  must find a store that sells postcards, buy multiple postcards and postage for each

7  of them, and fit their communications within the small confines of the card,

8  allowing room for their own name and address, the addressee's name and address,

9  postage, the postmark, and the Jail's "received" stamp. And, it would be

10 completely impractical for most publishers, booksellers, and others to spend the

11 resources to create special postcards just to communicate their messages to the

12 prisoners at this Jail. In short, if mail volume went down it is because Defendants

13 have stamped out protected speech.

14      *(vi)    The Policy Impedes Rehabilitation*

15      Under the guise of accomplishing objectives that are irrationally and

16 arbitrarily connected to Defendants' policy, the "Postcard Only" policy *hampers*

17 the penological objective of rehabilitation. The Supreme Court has recognized that

18 "the weight of professional opinion seems to be that inmate freedom to correspond

19 with outsiders advances rather than retards the goal of rehabilitation[.]" *Procunier*

20 *v. Martinez*, 416 U.S. 396, 412-413 (1974), overruled in part on other grounds by

21 *Thornburgh v. Abbott*, 490 U.S. 401, 417 (1989). Indeed:

22      Constructive, wholesome contact with the community is a valuable
       therapeutic tool in the overall correctional process. . . .
23      Correspondence with members of an inmate's family, close friends,
       associates and organizations is beneficial to the morale of all confined

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 10

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

9870.02 ed260902

persons and may form the basis for good adjustment in the institution and the community.

*Martinez*, 416 U.S. at 413 n. 13 (quoting Policy Statement 7300.1A of the Federal Bureau of Prisons and Policy Guidelines for the Association of State Correctional Administrators); *see also Morrison v. Hall,* 261 F.3d 896, 904 n. 7 (9th Cir. 2001).

As in *PLN I* and *PLN II*, Plaintiff has shown that Defendant's "Postcard Only" policy is not rationally related to a legitimate penological objective.

          (b)    Second Turner Factor:  Alternatives for Plaintiff

The second *Turner* factor is whether Defendants afford Plaintiff an alternative means to exercise its constitutional rights. They do not. PLN has no practical way to reach its intended audience. PLN cannot communicate its speech *by mail* because its letters and brochures to thousands of persons across the country are not written on postcards, and its catalog describing 43 different books for sale does not fit onto a postcard.  Wright Dec. ¶17.  PLN cannot effectively communicate its written speech by telephone or fly from Vermont to Washington to meet with prisoners.  *Id.*  Like most publishers, PLN cannot tailor its correspondence to the irrational requirements of a particular jail.  *Id.*

Courts have rejected mail policies requiring speech to be communicated by a particular medium.  In *Morrison v. Hall,* 261 F.3d 896 (9th Cir. 2001), the Ninth Circuit rejected the Oregon DOC's argument that it could ban bulk-rate mail because prisoners may listen to radio or watch television instead:  "Although radio and television are alternative media by which inmates may receive information about the 'outside' world, they should not be considered a substitute for reading newspapers and magazines."  *Id.* at 904.  Twenty-five years ago, the Fifth Circuit

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 11

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

9870.02 ed260902

1  rejected the same argument in *Mann v. Smith*, 796 F.2d 79, 83 (5th Cir. 1986):

2    [T]he contents of television are different from what one finds in the
     printed media. It is not up to the Midland County Sheriff or this court
3    to decide that television can adequately serve the first amendment
     right to receive protected materials.

4    Costly alternatives have likewise been held inadequate. In *PLN I*, 238 F.3d

5  at 1149, and *Morrison*, 261 F.3d at 904, the Ninth Circuit denied the governments'

6  claims that banning bulk rate mail was permissible because publishers could send

7  mail via first or second class, holding that forcing a publisher to "take additional

8  costly steps" to communicate with prisoners is unconstitutional.

9          (c)    Third Turner Factor: Effect on Defendants' Resources

10    The third Turner factor is the effect on prison staffing and resource

11  allocation. *Turner*, 482 U.S. at 90. Since the Jail quickly discarded its policy in

12  response to Plaintiff's Motion for Preliminary Injunction, it seems evident that

13  Defendants recognized that delivering letters—as they had done for many years

14  before September of last year—did not hamper staffing and resource allocation.

15    In addition, "the policies followed at other well-run institutions [are]

16  relevant to a determination of the need for a particular type of restriction."

17  *Morrison*, 261 F.3d at 905 (quoting *Martinez*, 416 U.S. at 414 n.14). PLN has

18  communicated its letters, catalogs, and brochures via mail to thousands of

19  prisoners country-wide since its founding in 1990. Wright Dec. ¶3. It distributes

20  its journal to about 2,200 correctional facilities, including the Federal Bureau of

21  Prisons ("BOP") housing 209,770 prisoners, Ex. 9, and the Washington

22  Department of Corrections ("WDOC") housing over 16,000, Ex. 10.

23    Neither the BOP nor the WDOC restrict incoming mail to postcards, or bans

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 12

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1    catalogs. *See* Exs. 7, 8. This is strong evidence the third *Turner* factor favors PLN.

2              (d)    Fourth Turner Factor: Defendants' Alternatives

3          The fourth *Turner* factor is whether prison authorities have "readily

4    available" alternatives. "[T]he existence of obvious, easy alternatives may be

5    evidence that the regulation is not reasonable, but is an 'exaggerated response' to

6    prison concerns." *Turner,* 482 U.S. at 90.

7          When Defendants quickly abandoned their policy when challenged—

8    without explanation or justification—it was apparent they possess other readily

9    available alternatives that they have now turned back to, and that their postcard-

10   only policy was just an exaggerated response.

11         Regardless of Defendants' claimed justifications, the fact that more than

12   2,000 correctional facilities nationwide accept PLN's materials suggests that the

13   Jail's ban is an exaggerated response. *See Hrdlicka v. Reniff*, 631 F.3d 1044, 1055

14   (9th Cir. 2011) (holding that widespread distribution of publisher's materials

15   suggests jail bans may be exaggerated response).  Indeed, until September of last

16   year, Defendants accepted envelopes too.

17         **2.    Banning Catalogs Is Irrational**

18         Defendants' catalog ban[1] is unconstitutional. In *PLN II*, the Ninth Circuit

19   held a ban on all catalogs—including those virtually identical to the PLN catalogs

20   censored here—violates the First Amendment, and permanently enjoined the

21   _____

22   [1] Defendants' mail policy bans all catalogs and other publications that are not a

23   newspaper, paperback book, or approved magazines. *See* Ex. 5, at pg. 6.

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 13

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

9870.02 ed260902

1    Washington Department of Corrections. 397 F.3d 692, 696 (9th Cir. 2005). A

2    political subdivision of Washington, a County Jail is bound by this precedent.

3         Book catalogs can spark interest in science, literature, music, art, and human

4    rights. PLN's 2010 book catalog describes 43 books, dictionaries, and resource

5    materials on the rights of prisoners regarding health and safety, self-representation

6    in court, finding a lawyer, job searches, successful reentry upon release from

7    prison, and the mental health crisis in prisons. *See* Ex. GGG. Since the Ninth

8    Circuit has already held under the first *Turner* factor that censoring catalogs is

9    irrational, and unconstitutional, no analysis under the other factors is warranted.

10   Indeed, Defendants seem to have recognized this and quickly changed their policy,

11   which is strong evidence that their policy was irrational, that it posed no burden to

12   the Jail, and that it was an exaggerated response.

13   **3.    Defendants' Prohibition of All But a Pre-Approved Publication
     List, Arbitrarily Excluding *Prison Legal News*, Violated the**

14   **Constitution**

15        Defendants' policy listing of fifteen random magazines as the only ones

16   approved for prisoners to receive is self-evidently arbitrary. Why are "Better

17   Homes and Gardens" and "Family Fun" allowed when prisoners have no access to

18   their home and little time with their family? Why "Business Week," "Money," and

19   "Smart Money," on the approved list when prisoners cannot manage their finances

20   or funds—certainly not by postcard? These are educational and valuable

21   publications for prisoners to receive and read, and prisoners should have the right

22   to receive them. But Defendants acted arbitrarily when they selected these

23   publications alone, prohibiting prisoners from receiving *Prison Legal News*, which

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 14

9870.02 ed260902

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

1   provides information and educational material of special interest to prisoners about

2   their legal rights, their health and safety, and that they can use to challenge the

3   government's treatment of them or their conditions of confinement.

4        "[P]rior restraints on speech and publication are the most serious and the

5   least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n v.*

6   *Stuart*, 427 U.S. 539, 559 (1976).  The public has an important interest in

7   protecting the "marketplace of ideas" wherever it may be found, and in the

8   continued vitality of the Bill of Rights.  At the heart of the First Amendment is the

9   right of the press to disseminate and exchange information on important issues of

10  public concern, in particular when that discussion may be critical of the

11  government.  The Defendants can offer no rational basis for their categorical

12  restriction on legitimate reading material that isn't listed, as evidenced by their

13  prompt withdrawal of the restriction when challenged by the Plaintiff's Motion for

14  Preliminary Injunction.  The restriction does not serve any legitimate penological

15  goal and delivery of other magazines from vendors does not burden the Jail, which

16  leads to the ineluctable conclusion that the restriction was an exaggerated response.

17  **B.    FOURTEENTH AMENDMENT**

18       The Supreme Court long ago recognized that a publisher's right to

19  communicate with prisoners is rooted not only in the First Amendment, but also in

20  the Fourteenth Amendment.  *Pell v. Procunier*, 417 U.S. 817, 832 (1974).  Thus,

21       [T]he decision to censor or withhold delivery of a particular letter
22       must be accompanied by minimum procedural safeguards. The
         interest of prisoners and their correspondents in uncensored
         communication by letter, grounded as it is in the First Amendment, is
23       plainly a "liberty" interest within the meaning of the Fourteenth

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 15

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

9870.02 ed260902

1    Amendment even though qualified of necessity by the circumstance of
2    imprisonment. As such, it is protected from arbitrary governmental
     invasion . . .

3  *Martinez*, 416 U.S. at 417-18. Repeatedly, the Ninth Circuit and Eastern District

4  of Washington have reaffirmed this core principle that notice and an opportunity to

5  appeal censorship by prisons is required by the Constitution. *See, e.g., PLN I*, 238

6  F.3d at 1152-53; *PLN II*, 397 F.3d at 701; *Krug v. Lutz*, 329 F.3d 692, 697-98 (9th

7  Cir. 2003); *Miniken v. Walter*, 978 F.Supp. 1356, 1363-64 (E.D. Wa. 1997).

8    Publishers have a right to procedural due process because:

9    Without notifying the free citizen of the impending rejection, he
     would not be able to challenge the decision which may infringe his
10   right to free speech . . . [and] since the inmate-recipient would not
     have seen the contents of the withheld letter, he may require the aid of
11   the author to meaningfully challenge the rejection decision.

12 *Martin v. Kelley*, 803 F.2d 236, 243-44 (6th Cir. 1986); *see also, Montcalm Pub.*

13 *Corp. v. Beck*, 80 F.3d 105, 109 (4th Cir. 1996); *Cofone v. Manson,* 409 F.Supp.

14 1033, 1042 (D. Conn. 1976).

15   Although constitutionally mandated to afford due process to publishers when

16 censoring prisoner mail, Defendants plainly failed to do so. Defendants gave

17 grossly inadequate notice when censoring PLN's publications, catalogs, books, and

18 correspondence. For some mailings, the Jail merely returned the material stamped

19 uninformatively, "unauthorized content," without identifying the unauthorized

20 aspects, why, and what policy applies. For other mailings, the Jail's justifications

21 were merely "not a post card," "unauthorized content, not a post card," or "exceeds

22 1/4" thickness/size limit." These notations did not notify PLN what was

23 objectionable, how to cure any defect, or how to challenge the rejection.

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 16

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

9870.02 ed260902

1    Further, Defendants failed to provide Plaintiff with *any* opportunity to be

2    heard to challenge the censorship decisions.  Defendants' rejection stamp provides

3    *no* information to Plaintiff about how to challenge rejection decisions, who to

4    contact, what the appeal must contain, or any deadlines.  *See* Wright Dec. ¶13;

5    Exs. A-CCC.  Nor do Defendants' mail polices provide any appeal rights or

6    procedures.  Defendants admit to these failures in their Answer.  *See* Dkt. 34 ¶¶

7    4.6.4, 4.7.4, 4.8.8, 4.9.4, 4.15, 4.20.14, and 4.21.4.

8    The Jail's failure to afford PLN an opportunity to be heard interfered with

9    the correction of obviously erroneous censorship.  For example, the Jail wrote the

10   words "exceeds 1/4" thickness/size limit" as the basis for censorship on several

11   envelopes that contained three folded standard pieces of paper, self-evidently well

12   under 1/4" in thickness.  Further, the opportunity to be heard would have been

13   important to challenge the Jail's statement of *different* reasons for rejecting

14   identical materials.  For example, the Jail rejected the same informational

15   brochures and book catalogs sent by PLN to different prisoners by marking some

16   "unauthorized content," others "not a postcard" and yet others "exceeds 1/4"

17   thickness/size limit."  *See e.g.* Exs. A, F, and J.  And, the Jail sometimes gave the

18   prisoner addressee one reason for rejection but gave a different reason to PLN.  For

19   example, when the Jail rejected PLN's August 2010 *Prison Legal News* magazine

20   sent to prisoner Bacon, the Jail told PLN "unauthorized content" was the reason for

21   rejection, while it told Mr. Bacon the mail was "Not Legal."  *Compare* Exs. OOO,

22   NNN, and LLL; *see also,* Exs. U and III; XX and JJJ; G and KKK; B, LLL, and

23   MMM; AAA and PPP. An opportunity to be heard is a crucial, constitutionally-

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 17

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

9870.02 ed260902

1    mandated chance to correct errors, which Defendants denied to PLN.

2        Defendants have admitted they did not afford PLN due process for any

3    censored mailings.  And, the Jail adopted a due process policy for the first time

4    only in response to Plaintiff's Motion for Preliminary Injunction--a concession that

5    a policy was required.  But the "New Section" on due process, Dkt. 25, Att. 3, is

6    still lacking:  It recognizes non-prisoner due process only for the "sender," making

7    no mention of receiving notice or a right to appeal censorship when non-prisoners

8    like PLN are intended recipients of mail from prisoners.

9        Further, the new policy affords non-prisoners such as PLN a meager ten

10   days to appeal, beginning from when the Jail claims to have mailed notice.  Why

11   only ten days?  Defendants have not explained why and there is ample reason to be

12   concerned that an exceedingly short time frame will deprive correspondents of a

13   fair opportunity to correct wrongful censorship, with no corresponding legitimate

14   benefit to the Jail.  Even if PLN investigated immediately upon receiving such

15   notice, such a tight timeline leaves an inadequate margin in light of delays in mail

16   delivery across the country, office closures due to weather or holidays, erroneous

17   recording of dates by the Jail, potential multiple notices received at the same time,

18   and the need to research and prepare a cogent appeal.  Since Defendants did not

19   give PLN any due process notice at all for their censorship decisions, PLN lacks

20   sufficient experience with Defendants' implementation of their new policy to

21   determine whether it is adequate in this regard but reserves the right to challenge

22   the length of the time to appeal as unconstitutionally short if it proves deficient.

23

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 18

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

9870.02 ed260902

## C.    DECLARATORY AND INJUNCTIVE RELIEF

Trial courts are vested with broad discretion to fashion equitable relief. In accordance with the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, the court has a "'duty to decide the appropriateness and the merits of the declaratory request irrespective of its conclusion as to the propriety of the issuance of the injunction.'" *Steffel v. Thompson*, 415 U.S. 452, 468 (1974)   (quoting *Zwickler v. Koota*, 389 U.S. 241, 254 (1967)).  A declaratory judgment is necessary, and appropriate.

"A federal court possesses broad powers to remedy constitutional violations ...." *Al-Alamin v. Gramley*, 926 F.2d 680, 685 (7th Cir. 1991). To obtain an injunction, Plaintiff must prove a violation is ongoing or likely to recur. *Green v. Mansour*, 474 U.S. 64, 71 (1985). "[The] scope of the remedy is determined by the nature and extent of the constitutional violation." *Milliken v. Bradley*, 418 U.S. 717, 744 (1974); *Armstrong v. Davis*, 275 F.3d 849, 870 (9th Cir. 2001); *PLN II*, 397 F.3d 692 (9th Cir. 2005) (affirming injunction prohibiting ban on subscription mail, catalogs). The "remedy must be narrowly tailored," but a court has discretion to fashion the relief. *United States v. Paradise*, 480 U.S. 149, 185 (1987).

Ample Ninth Circuit precedent warned Defendants not to adopt their draconian and irrational policies. When challenged, the policies were hastily withdrawn with no explanation for why they were adopted let alone no longer needed.  Yet, Defendants continue to deny their policies violate the Constitution. Further, Defendants tailored their new policy to strike only those policies that they believe PLN can challenge while retaining the incoming mail postcard-only policy that continues to violate the rights of prisoners' family and friends.  Defendants'

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 19

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

9870.02 ed260902

1  behavior suggests their change of heart is not genuine but rather merely a litigation

2  response, which they can readily undo, readopting their old mail policy when this

3  case is concluded.

4      The "loss of First Amendment freedoms, for even minimal periods of time,

5  unquestionable constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373

6  (1976); *see also Sammartano v. First Judicial District Court*, 303 F.3d 959, 973

7  (9th Cir. 2002). On similar issues the courts of this Circuit have issued such

8  injunctions. *See, e.g., Miniken v. Walter*, 978 F. Supp. 1356, 1364 (E.D. Wa.

9  1997) (enjoining DOC ban on *PLN* subscription magazine); *Ashker v. California*

10  *Dep't of Corr.*, 224 F. Supp.2d 1253, 1264 (N.D. Cal. 2002) (enjoining DOC

11  policy that prohibited delivery of book packages without a book label); *Clement v.*

12  *California Dep't of Corr.*, 220 F. Supp.2d 1098, 1116 (N.D. Cal. 2002) (enjoining

13  DOC policy that prohibited inmates from receiving internet documents).

14      Defendants' policies and practices were plainly unconstitutional. The Court

15  should declare them so, and enjoin further violations.

16      DATED this 27th day of April, 2011.

17                           MacDONALD HOAGUE & BAYLESS

18

19                  By:

20                      Jesse Wing, WSBA # 27751
                       JesseW@mhb.com
                       Katherine Chamberlain, WSBA # 40014

21                      KatherineC@mhb.com
                       Attorneys for Plaintiff

22

23

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 20

MacDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

9870.02 ed260902

## CERTIFICATE OF SERVICE

I certify that on the date noted below I electronically filed this document entitled **MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following persons:

Counsel for All Defendants:

Robert B. Binger
rbinger@spokanecounty.org
Sr. Deputy Prosecuting Attorney
Spokane County Prosecuting Attorney's Office
W. 1115 Broadway, 2nd Floor
Spokane, WA 99260
Phone: 509/477-2881
Fax: 509/477-3672


DATED this 27th day of April, 2011, at Seattle, Washington.




Brina Carranza, Legal Assistant

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 21

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

9870.02 ed260902