HONORABLE ROBERT H. WHALEY

Sarah A. Dunne, WSBA No. 34869
Nancy Talner*, WSBA No. 11196
Lindsey Soffes*, WSBA No. 41506
AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
Telephone: (206) 624-2184
Email: dunne@aclu-wa.org
       talner@aclu-wa.org
       lsoffes@aclu-wa.org

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| PRISON LEGAL NEWS, a project of the HUMAN RIGHTS DEFENSE CENTER,<br><br>Plaintiff,<br><br>v.<br><br>SPOKANE COUNTY, SPOKANE COUNTY SHERIFF'S OFFICE, OZZIE KNEZOVICH, individually and in his capacity as Spokane County Sheriff, JOANNE LAKE, in her official and individual capacity, LYNETTE BROWN, in her official and individual capacity,<br><br>Defendants. | No. CV-11-029-RHW<br><br>BRIEF OF <u>AMICUS CURIAE</u> AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON SUPPORTING PLAINTIFF'S PARTIAL SUMMARY JUDGMENT MOT.<br><br>HEARING DATE: JUNE 16, 2011<br>HEARING TIME: 8:00 AM<br>HEARING PLACE: THOMAS FOLEY U.S. DISTRICT COURT, 7TH FLOOR |

The American Civil Liberties Union of Washington ("ACLU") submits this amicus curiae brief in support of Plaintiff's motion for declaratory relief, partial summary judgment and permanent injunction. For the following reasons, this Court should grant Plaintiff PLN's motion for a declaration that the original

and revised postcard policies are unconstitutional, for partial summary judgment, and for a permanent injunction.

## I.      INTEREST OF AMICUS

This case involves a significant violation of the First Amendment rights of anyone wishing to engage in written mail correspondence with a Spokane County Jail inmate. Because of the impact on fundamental rights of numerous individuals, and the fact that other Washington State jails, including some within the Eastern District of Washington, are implementing such policies, the issue raised by this case is of great public interest. The far-reaching consequences of this case warrant the Court's exercise of discretion to accept this amicus brief.

## II.     FACTUAL BACKGROUND

The pleadings filed in this case indicate that on September 1, 2010, Defendants Spokane County, Spokane County Sheriff's Office, Sheriff Ozzie Knezovich, Lieutenant Joanne Lake, and Office Manager Lynette Brown began implementing a new policy at the Spokane County Jail that governs all prisoner mail. This policy, in the form originally adopted by defendants, required that all of prisoners' incoming and outgoing mail, with the exception of legal and "official" mail, be in postcard form—written on a pre-franked, non-glossy postcard, with dimensions not exceeding 5.5 inches by 8.5 inches. Moreover, any correspondence with "… crayon markings, colored pencil markings,

**drawings** ...'" was considered a violation of the policy (emphasis added). The original policy, limiting almost all mail to postcards, contained a "philosophy" section that is still part of the defendants' mail policy, claiming it was consistent with respecting inmates' and their correspondents' constitutional right of expression and privacy.

Only when faced with this lawsuit, and an imminent deadline for filing defendants' brief responding to plaintiff's motion for a preliminary injunction, did defendants suddenly change their mail policy to remove the postcard restriction as to all outgoing mail and as to incoming "business" mail. Despite defendants' claims that the original postcard policy was essential to the security of the jail, they dropped most of it without even attempting to defend its constitutionality. Cursory research would have shown that it was likely unconstitutional, but that did not stop defendants from adopting the postcard policy. They left the unconstitutional postcard policy in place for 5 ½ months, from September 1, 2010, to mid-February 2011. Defendants are persisting in retaining the parts of the original postcard-only policy that force the use of postcards for all incoming mail from non-businesses – family members, children, friends, and anyone without a return address of a verifiable business or non-profit organization. The total ban on drawings in incoming and outgoing mail is also retained.

In order for the Court to properly evaluate defendants' claims that they will respect inmates and their correspondents' constitutional rights without an injunction, the severely harmful effects of the remaining postcard policy must be considered. Postcards expose the content of the correspondence to anyone who might handle the mail at any point in its journey and severely reduce the writing space that was previously available in letters, making a detailed exchange of ideas impossible. The revised postcard policy causes an obvious chilling effect on discussion of sensitive family, relationship or health issues in incoming non-business written correspondence. Such topics as AIDS, pregnancy, sexually transmitted diseases, disabilities, mental health conditions, abuse, sexual orientation, ending or starting relationships, confidential employment or business matters, a child's behavior and an inmate's considering cooperating with the police all are effectively censored by the revised postcard policy given the risk of exposure to unknown strangers. The revised postcard policy does nothing to ameliorate these problems; indeed, it may exacerbate it by making written communication a one-way street, since sensitive topics may be addressed in outgoing letters from inmates, but the person trying to respond must risk exposure on a postcard.

Another likely effect of the revised postcard policy is that spiritual guidance and support from clergy on sensitive matters, Bible study

correspondence courses, communication with various health providers and working the steps of a 12-step addiction program remain virtually impossible as a result of the policy limiting incoming non-business correspondence to postcards. Many counselors, such as AA sponsors, will not meet the policy's requirements for incoming "business" mail. It is common knowledge that persons in jail often are in crisis dealing with pressures, strong emotions, fears and loneliness. This makes written correspondence with parents, children, spouses, domestic partners, support groups, counselors, sponsors or friends their only lifeline to the outside world.

Many people are not able to make in-person visits to the jail and cannot afford the exorbitant cost of collect phone calls. For example, *Amicus* heard from an inmate's mother who is over 80 years old and lives out of state. Her arthritis makes it physically impossible to write in cramped handwriting on a small postcard, but she is able to correspond by handwriting in multi-page letters, which allow for large handwriting. E-mail and cell phones are not permitted forms of communication with inmates. For these reasons, the harmful effects of the new policy's limits on incoming letters are evident.

The revised postcard policy also prohibits prisoners from engaging in entire forms of written communications, such as expressive or artistic drawings. Family members and friends may not send an inmate a greeting card to mark

AMICUS BRIEF OF ACLU SUPPORTING PL.'S PARTIAL SUMM. JUDGMENT MOT.
Page | 5

important occasions. These restrictions are significant in that some inmates and their correspondents (particularly young children) lack the ability to read but can understand communication in the form of a drawing or card with a picture on it.

Amicus is aware of two other county jails within the Eastern District of Washington which have adopted a postcard-only policy similar to the original Spokane Jail postcard-only policy. Washington has 39 counties and by far the majority has not found a postcard-only policy necessary to maintain safety or security at their jails.

### III.    ARGUMENT

**A. Both the Original and Revised Postcard Only Mail Policies Violate the First Amendment Right to Send and Receive Mail. They Violate the Rights of All Who Wish to Correspond with Inmates, in Addition to the Rights of the Inmates.**

The right to receive and send mail is unquestionably protected by the First Amendment. Blount v. Rizzi, 400 U.S. 410 (1971). The law is also clear that jail inmates generally retain the First Amendment right to send and receive mail. See, e.g., Thornburgh v. Abbott, 490 U.S. 401, 407 (1989); Procunier v. Martinez, 416 U.S. 396 (1974), overruled in part on other grounds, Thornburgh (noting that correspondence between a prisoner and an outsider implicates the First and Fourteenth Amendments); Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995). The Procunier case sets forth the requirements for a constitutional

policy on outgoing jail mail, while the requirements of Turner v. Safley, 482 U.S. 78 (1987), are used to evaluate the constitutionality of a jail mail policy regarding incoming mail.

It is not only inmate rights, but the First Amendment rights of the many people who correspond with them (described above) that are at stake here. "Correspondence between a prisoner and an outsider implicates the guarantee of freedom of speech under the First Amendment and a qualified liberty interest under the Fourteenth Amendment." Treff v. Galetka, 74 F.3d 191, 194 (10th Cir. 1996). Because the postcard-only policy significantly limits written correspondence from anyone wishing to correspond with jail inmates, and entirely prevents receiving drawings or other similar expressive materials that are not on a postcard, it unnecessarily and impermissibly violates the First Amendment rights of both the inmates and non-prisoners.

Written correspondence is a two-way street, as the United States Supreme Court has recognized:

> Communication by letter is not accomplished by the act of writing words on paper. Rather, it is effected only when the letter is read by the addressee. Both parties to the correspondence have an interest in securing that result, and censorship of communication between them necessarily impinges on the interest of each. . . . The wife of a prison inmate who is not permitted to read all that her husband wanted to say to her has suffered an abridgment of her interest in communicating with him as plain as that which results from censorship of her letter to him. In either event,

censorship of prisoner mail works a consequential restriction on the First and Fourteenth Amendments rights of those who are not prisoners.

Procunier v. Martinez, supra, 416 U.S. at 408-09.

The defendants do not argue that the original postcard only policy applicable to outgoing mail satisfied the test set forth in Procunier v. Martinez. Under the Martinez standard, 416 U.S. at 413, as clarified in Thornburgh v. Abbott, 490 U.S. at 411-414, the test for the constitutional validity of a regulation affecting a prisoner's outgoing mail is:

> First, the regulation or practice in question must further an important or substantial governmental interest unrelated to the suppression of expression. Prison officials may not censor inmate correspondence simply to eliminate unflattering or unwelcome opinions or factually inaccurate statements. Rather, they must show that a regulation authorizing mail censorship furthers one or more of the substantial governmental interests of security, order, and rehabilitation. Second, the limitation of First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved.

By failing to defend the original postcard only policy and adopting the revised policy, defendants in effect conceded that restricting prisoners' outgoing mail to postcards is simply not necessary to serve the government's interest in preserving order and security within the jail or crime prevention and, therefore, cannot satisfy the second prong of the Martinez standard. They realized that the original policy was unnecessary, because it is settled law that jail officials may inspect outgoing letters and require that they be submitted to jail staff in

unsealed envelopes to facilitate inspection. Beville v. Ednie, 74 F.3d 210, 213-14 (10th Cir. 1996); Stow v. Grimaldi, 993 F.2d 1002, 1004 (1st Cir. 1993).

Indeed, until September 2010, the Spokane County Jail satisfied its security interests in both outgoing and incoming mail by allowing prisoners to send and receive letters in envelopes with appropriate less restrictive safety precautions. This fact, combined with the jail's swift abandonment of the policy restricting outgoing mail to postcards, argues powerfully against a finding that a postcard policy is necessary to protect the government's interest in security of the jail and crime prevention.

It has also been suggested that the postcard-only policy, in its original form, is a cost-saving measure because it speeds up the process of sorting mail and, thereby, frees up staff. However, defendants have not offered proof of how much money, if any, the revised policy would save. See Beerheide v. Suthers, 286 F.3d 1179, 1189 (10th Cir. 2002) ("[i]n order to warrant deference, prison officials *must present credible evidence* to support their stated penological goals") (emphasis in original). Since the jail now permits outgoing letters, and incoming business letters, presumably it is inspecting those items as it did before the original postcard only policy was adopted. It is not clear that the revised policy provides any cost savings. In any event, a mere desire to cut down on costs—an interest that is not unique to the correctional setting—does not and

cannot satisfy the Martinez standard for outgoing mail. 416 U.S. at 413 (setting forth an exhaustive list of governmental interests that can justify restrictions on prisoners' outgoing mail and excluding cost). See also, Battle v. Anderson, 376 F. Supp. 402, 425 (E.D. Okla. 1974), aff'd in part and rev'd in part, 993 F.2d 1551 (10th Cir. 1993) (outgoing mail restrictions not justified when imposed "solely to serve the administrative convenience of the defendants, without furthering any demonstrated interest in the orderly operation of the institution or the rehabilitation of its inmates").

The unconstitutionality of postcard only policies has been recognized by the courts recently. In February 2011, Honorable Richard W. Story, United States District Judge for the Northern District of Georgia, ruled that a jail inmate stated a viable claim challenging a jail's policy restricting inmates' outgoing mail to postcards, explaining that censorship was a plausible purpose of the policy:

> -outgoing personal correspondence from prisoners-did not, by its very nature, pose a serious threat to prison order and security. … [Johnson's] allegations state a plausible claim that the Jail's policy violates the test. It is plausible, if not likely, that the alleged postcard policy exists for security reasons. It also is plausible, however, that the policy exists to facilitate improper censorship of outgoing mail. In either case, Plaintiff may argue that Jail officials could address their concerns by the less restrictive measure of requiring that general outgoing mail be placed in unsealed envelopes-as they allegedly do for attorney mail-instead of altogether limiting the type and size of the medium used for such mail.

AMICUS BRIEF OF ACLU SUPPORTING PL.'S PARTIAL SUMM. JUDGMENT MOT.
Page | 10

See Thornburgh, 490 U.S. at 412 (observing that "the implications for security are far more predictable" with outgoing mail). "

Johnson v. Smith, 2011 WL 344085 (N.D. Ga. 2011) (Slip Opin. 2/1/11) (citing Thornburgh, 490 U.S. at 411). Similarly, Honorable Wiley Y. Daniel, Chief United States District Judge for the District of Colorado, in December 2010 granted a preliminary injunction against a jail's postcard only policy, on the grounds that a likelihood of success on the merits had been shown. See Order attached hereto in Exhibit A.

The compelling reasoning of these courts demonstrates that both the original and revised versions of the Spokane County Jail's postcard only policy are unconstitutional. There is no evidence that restricting to postcards all incoming mail from family, friends, religious counselors, AA sponsors and the like is "rationally related to a legitimate and neutral governmental objective" (Turner Factor 1, 482 U.S. at 89-90). Indeed, as discussed above and below, the new policy fails to promote safety and security by increasing the inmates' stress levels, fails to provide cost savings, and undermines the governmental objective of reducing recidivism. A jail policy that does nothing but harm governmental interests at the same time as it violates significant constitutional rights of inmates and all who wish to correspond with them is hardly "rational."

Case 2:11-cv-00029-RHW    Document 71    Filed 06/02/11

Second, Turner Factor 2 considers whether alternative means of exercising the impinged right remain open. Turner, 482 U.S. at 90. For all the reasons discussed above, the revised policy's restrictions on incoming mail do not provide adequate alternative means of communication. Many topics can only reasonably be discussed in closed letter correspondence, and many people needing to communicate with inmates are unable to use phone calls or in-person visits.

The third Turner factor, 482 U.S. at 90, considers whether the right at issue "can be exercised only at the cost of significantly less liberty and safety for everyone else, guards and other prisoners alike." There is no evidence that there would be significant costs to returning to the policy permitting incoming non-business letters, subject to inspection for contraband and other criminal activity. This was the policy in place at the Spokane Jail for many years prior to September 2010, and remains the policy that most other jails in Washington, all facing difficult budget times, consider reasonable. The vast majority of jails and other incarceration facilities likely experience incidents with contraband or prohibited items in the mail on some occasions, but that justifies improved security procedures rather than the immensely overbroad restrictions on written correspondence that the defendants have adopted here. See Martinez, 416 U.S. at 414 n. 14 ("While not necessarily controlling, the policies followed at other

well-run institutions would be relevant to a determination of the need for a particular type of restriction").

The fourth <u>Turner</u> factor, 482 U.S. at 90-91, considers whether "obvious, easy alternatives" to the challenged regulation exist. This factor is easily satisfied because the jail can resume the constitutional policy it had for years prior to September 2010, a policy most other Washington jails follow to this day. All four <u>Turner</u> factors lead to the conclusion that the current policy is unconstitutional. Enjoining it is warranted, because curtailing constitutionally protected speech never advances the public interest. <u>ACLU v. Reno</u>, 217 F.3d 162, 180 (3d Cir.2000), <u>vacated on other grounds sub nom.</u>, <u>Ashcroft v. ACLU</u>, 533 U.S. 973 (2001).

**B. The Postcard Only Mail Policy Harms Other Compelling Interests Including the Fundamental Right to Maintain Parent-Child Relationships and Legally Protected Confidential Relationships Such as Those Between Inmates and Clergy, Spouses, and Counselors.**

The right to maintain family relationships is a fundamental right protected by the First and Fourteenth Amendments. <u>Troxel v. Granville</u>, 530 U.S. 57 (2000); <u>Moore v. East Cleveland</u>, 431 U.S. 494 (1977); <u>Meyer v. Nebraska</u>, 262 U.S. 390 (1923); <u>P.O.P.S. v. Gardner</u>, 998 F.2d 764, 767 (9th Cir. 1993) (citing <u>Stanley v. Illinois</u>, 405 U.S. 645, 651 (1972) ("The rights to conceive and raise one's children have been deemed 'essential,' 'basic civil rights of man' . . . .")).

Certain other personal relationships are also constitutionally protected, including relationships with others in political, social and civic groups, whether or not the group has a verifiable business or non-profit organization's address. Roberts v. U.S. Jaycees, 468 U.S. 609 (1984). "[T]he constitutional shelter afforded such relationships reflects the realization that individuals draw much of their emotional enrichment from close ties with others." Roberts, 468 U.S. at 619. The current postcard only policy detrimentally affects these constitutionally protected relationships.

It is already difficult for prisoners to maintain relationships with their children while incarcerated. The revised postcard policy poses a devastating threat to this relationship. It drastically reduces the amount of written communication prisoners can have with their children and disallows prisoners from receiving photographs of their children. It also makes communication with children who are too young to read extremely difficult, since sending or receiving handmade drawings that serve to express thoughts and feelings without words are banned. The policy entirely precludes children from mailing their school drawings or other work to a jailed parent. Further, because of the public nature of a postcard's contents, the revised postcard policy also renders it impossible for spouses, partners or other caregivers to write to inmates about intimate aspects of their children's development, discipline, or education since

they must risk exposure to the public on a postcard.

Additionally, the revised postcard policy forces prisoners either to cease receiving written communication with the outside world or to expose to public view information for which Washington State law has accorded heightened privacy protections, such as information exchanged with spouses and religious or spiritual counselors. WASH. REV. CODE § 5.60.060(1), (3) (2008). For incarcerated persons, many of these otherwise privileged communications necessarily occur by way of written correspondence and, as a result of the postcard policy, are exposed to anyone who handles, processes, or views the postcards. A few examples of harm the policy might cause are the following situations. An incarcerated AIDS patient who has relied on private, written communications with members of an AIDS-patient support group to improve his emotional health now feels isolated and experiences a concomitant decrease in physical and emotional wellbeing. A depressed spouse and father who can no longer receive letters from his wife about the realities of life in jail, household financial matters and his precarious emotional state feels scared, alone, and cut-off from his family.

These examples illustrate how the original and revised postcard policies mean prisoners have been forced to either stop discussing sensitive (e.g., medical, spiritual, intimate, financial) information with those close to them, or

risk divulging confidential, sensitive information to unknown third parties who can easily intercept these messages, such as postal workers, office secretaries, and persons who handle the postcards in the mail.

### C. A Postcard Only Mail Policy Harms Rehabilitation and Successful Reintegration into Society.

It is well known that prisoners' maintenance of social connections with their family, life partners, friends, employers, education and housing programs, and religious comfort and sobriety support networks, among others, are essential to prisoners' rehabilitation and successful reintegration into society upon their release. See Terry Kupers, M.D., *Prison Madness: The Mental Health Crisis Behind Bars and What We Must Do About It* (1999) 157 ("Research shows that continuous contact with family members throughout a prison term makes it much less likely that a prisoner will be re-arrested and reimprisoned in the years following his release"). Maintaining these ties is particularly significant for jail inmates who may be incarcerated for a short time awaiting release pending trial or serving a short sentence. Letters are often the only form of hope and uplift inmates have in their lives; one religious organization which mentors inmates through written correspondence refers to letters as "paper sunshine." It is a devastating blow for the revised postcard policy to take them away. What the

Second Circuit said about the importance of outgoing mail, citing Martinez, is just as apt regarding the importance of incoming mail:

> In the close and restrictive atmosphere of a prison, … [t]he simple opportunity to read a book or write a letter, whether it expresses political views or absent affections, supplies a vital link between the inmate and the outside world, and nourishes the prisoner's mind despite the blankness and bleakness of his environment.

Wolfish v. Levi, 573 F.2d 118 (2nd Cir. 1978), reversed by Bell v. Wolfish, 441 U.S. 520 (1979) (but specifically noting, 441 U.S. at 528 n.9, that the prison officials did not challenge that portion of the Second Circuit decision enjoining the reading and inspection of inmate outgoing and incoming mail).

Because the revised postcard policy results in the weakening and disruption of so many significant relationships for inmates, it is in effect a policy that isolates prisoners from their family and friends and other community ties at a time when they are most in need of that support. Full and open communication with family, employers and counselors can help show inmates the way to a productive crime-free life upon their release. Additionally, the revised postcard policy likely serves to increase stress and boredom among prisoners and, therefore, increases the risk of violence in the jail, with the result that the policy's implementation may actually result in both a loss of security inside the institution and a greater threat to the community's safety upon prisoners' release. Far from satisfying the Turner test by "furthering"

rehabilitation or safety, the Postcard Only Policy has exactly the opposite effect. For that reason as well, it should be ruled unconstitutional.

## IV.   CONCLUSION

For the foregoing reasons, this Court should declare that the Postcard Only Mail Policy, both in its original and revised forms, is unconstitutional. It should also grant Plaintiff's requested permanent injunction because the injunction is necessary to serve the public interest. This is the first court in Washington to deal with a postcard-only policy. A permanent injunction serves the public interest because it will provide guidance to other jail facilities around the state as to what constitutes a constitutional jail mail policy. Indeed, while there are 37 county jails and 20 city jails in Washington, the majority of these facilities have not found a postcard-only policy necessary to maintain safety or security at their jails. Nevertheless, within the Eastern District of Washington, Amicus is aware of two county jails that adopted a postcard-only policy similar to the original Spokane Jail postcard-only policy

/ /

/ /

shortly after Spokane did. The public interest thus requires a permanent injunction.

DATED this 2nd day of June, 2011.

Respectfully submitted,

ACLU OF WASHINGTON FOUNDATION

By:   /s/ Sarah A. Dunne

Sarah A. Dunne, WSBA No. 34869
Nancy Talner*, WSBA No. 11196
Lindsey Soffes*, WSBA No. 41506
* Not admitted in Eastern District of Washington

# CERTIFICATE OF SERVICE

I hereby certify that on June 2, 2011, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Jesse Wing, Attorney for Plaintiff

jessew@mhb.com

Katherine C. Chamberlain, Attorney for Plaintiff

katherinec@mhb.com

Lance Weber, Attorney for Plaintiff

lweber@humanrightsdefensecenter.org

Robert B. Binger, Attorney for Defendants

rbinger@spokanecounty.org

/s/ Sarah A. Dunne
Sarah A. Dunne, WSBA No. 34869